| 9 | 537 |
| 12 | 564 |
| 12 | 566 |
| 14 | 679 |
| 9 | 537 |
| 18 | 657 |
| 9 | 537 |
| 15 | 233 |
| 15 | 400 |
| 16 | 199 |
| 9 | 537 |
| 33 | 88 |

[No. 1300. Decided October 10, 1894.]

STANTON WARBURTON, *Appellant*, v. JACOB RALPH *et al.*, *Respondents.*

APPEAL — STATEMENT OF FACTS — VALIDITY — AMENDMENT — AP-PEAL BOND — SUFFICIENCY — PLEADING — SURETIES ON NOTE — RELEASE BY EXTENSION.

An appellant cannot, by motion, after a statement of facts has been settled, certified and filed in the supreme court, secure the insertion therein of matters eliminated by the trial court, although the statement had been amended by the trial court of its own accord, without the service upon appellant of proposed amendments thereto by the respondents.

Under Laws 1893, p. 114, §9, the settlement of a statement of facts is valid and legal upon the day set for hearing, when no amendments have been proposed within ten days of service of notice of settlement upon the adverse party, although the court, by an order made prior to said date, has extended the time for settlement for the purpose of allowing amendments to be proposed.

Where a statement of facts has been settled on the day named therefor, without any amendments having been proposed within the time specified by statute, and the court has certified that the statement contains all the material facts, etc., occurring in the cause, the court cannot subsequently alter or amend the statement and then amend his certificate so as to make it conform to the statement as thus altered. (HOYT, J., dissents.)

The fact that appellant's brief does not designate all of the defendants as respondents is not a ground for dismissing the appeal, if the notice of appeal was properly entitled and was served upon all the parties appearing in the action.

When no exception is taken in the trial court to the affidavit of sureties upon an appeal bond, the defect is waived and cannot be urged in the supreme court. (HOYT, J., dissents.)

A direct allegation of a fact may be expressed to be made "upon information and belief," and is not on that account bad on demurrer, but, sufficient facts having been stated as existing, the allegation of the pleader that he states them "upon information and belief" will be regarded as surplusage.

Where a contract for the extension of the time of payment of a promissory note executed by two principal makers and their sureties is made with one of the principals only, such contract is valid, and, if not assented to by the sureties, will result in their discharge.

The fact that plaintiff left a promissory note for a certain sum in the hands of the cashier of a bank, with authority to cancel it upon the execution by the parties thereto of two new notes covering the same sum, constitutes such cashier an agent of plaintiff, so that his declarations concerning the subject matter, made in the absence of plaintiff, are admissible in evidence.

If one signs a promissory note apparently as a joint maker, but, when sued upon his undertaking, defends on the ground that he is in fact a surety merely, for the reason that he received no part of the consideration for the note, it is competent for the plaintiff to show that he dealt with the defendant as a principal and not as a surety.

Where there is a contention between the parties to an action as to whether or not the cashier of a bank was an agent of the plaintiff, whose declarations would bind his principal, and there was considerable testimony showing that certain notes payable to the plaintiff were left at the bank with the cashier to be there signed, simply for the convenience of all parties concerned, it is error for the court to refuse to charge the jury, that if they find from the evidence that the cashier was simply getting the signatures of the parties to the note in question, and that the note was simply left with him for the convenience of all the parties, then that fact alone would not constitute him the agent of the plaintiff so as to bind the plaintiff by the declarations of said cashier made to the defendants.

The request of a surety upon a promissory note that further time be granted him for its payment will not estop him from claiming a discharge, when a contract for extension has been entered into with his principal without his knowledge or consent.

*Appeal from Superior Court, Pierce County.*

*Baker & Campbell,* and *John M. Boyle,* for appellant.
*Coiner & Davis,* and *B. B. Gattel,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This action was brought by the appellant to recover the amount alleged to be due on a promissory note, of which the following is a copy:

"$5,100.00.        TACOMA, WASH., Aug. 13, 1892.
"Ninety days (without grace) after date, for value received, I promise to pay to the order of S. Warburton, fifty-one hundred dollars, at the Union Savings Bank and

Trust Company, Tacoma, Wash., with interest from date hereof, at the rate of two per cent. per month until paid.

"In case suit or action be instituted to collect this note or any part thereof, I agree to pay in addition to costs and disbursements provided by statute, five per cent. additional for attorneys' fees in said suit or action.   JACOB RALPH, W. B. KELLEY, WM. ZINRAM, D. B. HANNAH, A. U. MILLS, E. G. BACON, F. NACHTSHEIM."

One Geo. W. Boggs, having guaranteed the payment of the note, was also made a defendant, but the action was dismissed as to him before trial.

Defendants Ralph and Kelley, although duly served with process, did not appear, and default was entered as to them. Mills answered and the action as to him was continued. Each of the other four defendants filed a separate answer, but all of their answers were substantially alike, and the same reply was filed to each of them.

The cause was tried by a jury on the issues between the plaintiff and the defendants Zinram, Hannah, Bacon and Nachtsheim, and the jury returned a verdict for the defendants.   A motion for a new trial was made and denied, and thereafter a judgment was entered upon the verdict in favor of these four defendants and against the plaintiff, from which judgment the plaintiff appealed.

On February 17, 1894, notice of the filing of the proposed statement of facts was served by appellant on all of the parties who had appeared in the action, and, on the first day of March following, due proof of such service was made before the trial judge, who, upon the application of the appellant, settled and certified said statement.   Before certifying the proposed statement, however, the court, on its own motion, struck therefrom the following part thereof: "We also except to the refusal of the court to give his instructions in writing as requested by the plaintiff as follows : 'Comes now the plaintiff and requests the court to instruct the jury in writing only in the case;' and

we further except to the court's giving oral instructions to the jury,'' on the alleged ground that no exception of this character was brought to the knowledge of the court, the same having been taken, if at all, by dictating it to the stenographer in attendance, but not in the hearing of the court.    To the striking out of the foregoing words the plaintiff objected, which objection was overruled, and an exception allowed.

The appellant now moves this court to include in the statement of facts all that portion thereof which was eliminated by the court, and to consider and treat the same, for the purposes of this appeal, as if it had never been stricken out.    It is urged in support of the motion that inasmuch as the statute provides that, if no amendments to the proposed statement of facts be served upon the proposing party within ten days after service thereof on the adverse party, the proposed statement shall be deemed agreed ' to and shall be certified by the judge, at the instance of either party, at any time, without notice to any other party, on proof being filed of its service, and that no amendments have been proposed (Laws 1893, p. 114, § 9), it was the unquestionable duty of the court to certify the statement, as proposed, without alteration in any particular whatever.    That such was the duty of the court, under the provisions of this statute was, in effect, decided by this court in State, ex rel. Hersner, v. Arthur, 7 Wash. 358 (35 Pac. 121), but it does not necessarily follow from that fact that appellant's motion should prevail.    In our opinion it would not be proper practice to entertain a motion, in this court, to modify a certified statement of facts either by inserting new matter therein or by disregarding or striking out any portion thereof.    What the facts are, in any particular case, so far as this court is concerned, must be ascertained from the certificate of the trial court.    And the truthfulness of a statement properly certified to this

court cannot, for obvious reasons, be here questioned on appeal.

It is only in cases where the trial court refuses to settle and certify a proper statement of facts that the supreme court is authorized by law to exercise corrective or compulsory power in favor of a party who desires to have his case reviewed, and who, for that purpose, is entitled to have the facts occurring in the trial made a part of the record. And, in such cases, the party aggrieved by the action of the trial judge should make application to the appellate court for its mandate compelling such judge to settle the statement of facts. But, in this instance, the appellant was content with merely objecting to the proceeding of the court in striking out the portion of the statement above indicated, and did nothing further until after the statement had been settled, certified and filed in this court. If the statement is not what it should be, it cannot now be corrected in the manner proposed by the appellant. The motion must, therefore, be denied.

The respondents have filed a motion to strike out the statement of facts herein on the following grounds: (1) That the same was not settled according to law; (2) that the same was settled ex parte, and without notice to the respondents; and (3) that the same does not contain all the material facts, matters and proceedings, together with all the evidence used at the trial of said action, with all objections and exceptions thereto, heretofore occurring in the cause.

The claim that the statement of facts was not legally settled is founded upon the proposition that the court had no right or authority to act upon the application of appellant on March 1, 1894, for the alleged reason that, prior to that time, and on February 26, 1894, the court entered an order as therein stated, at the instance of counsel for defendants, extending the time for the settlement of the

statement of facts until March 3, 1894. It appears, how-
ever, that counsel intended to apply, and supposed he had
applied, to the court for an order extending the time in
which the defendants might serve and file amendments to
the plaintiff's proposed statement of facts, and not for the
order which was actually made and entered—as asserted
by respondents—through a clerical oversight.

Although the order above mentioned was entered prior
to March 1st, still the fact remains that on that day no
amendments to the statement of facts had been filed
or served, and we think the court very properly settled
and certified the proposed statement at that time. Indeed,
in view of the statute to which we have already alluded,
the court could not have done otherwise. The time within
which amendments may be filed and served is expressly
limited to ten days after service of a copy of the proposed
statement of facts on the adverse party, and the court has
no power or authority to extend the statutory period. At
any time after the expiration of the ten days' limitation
either party to the action may have the statement certified,
without notice to any other party, by applying to the
court and making the requisite proof; and of this right he
cannot be deprived, either directly or indirectly, by any
order of the court. The objection that the statement of
facts was not settled in accordance with law is therefore
untenable.

Neither do we deem the third ground stated sufficient to
authorize the striking out of the statement of facts, even
if it be conceded that the statements therein are true. It
is not necessary, in every case, that the statement of facts
shall contain all of the material facts, matters and pro-
ceedings occurring in the trial of the cause, and the judge
is not required to so certify unless such is the fact; see
Laws 1893, p. 115, § 11. In cases like the present, where
no amendments have been proposed within the time speci-

fied by the statute, the statement is deemed agreed to and must be certified accordingly; id., §§ 9, 11.   In this case the trial judge in his certificate to the statement which was settled on the first day of March, 1894, after stating all that was necessary or required under the statute in such cases, further certified, ''that the foregoing and annexed statement contains all the material facts, matters and proceedings, together with all the evidence used on the trial of said action, with all exceptions and objections thereto heretofore occurring in the cause, not already made a part of the record.''   On March 2, 1894, the respondents moved the court to set aside the certificate dated March 1, 1894, but the motion was denied, the court finding that it was regularly made, and that the order of February 26th was irregular and void.

On March 3d, the respondents, defendants below, proposed nine different amendments to plaintiffs proposed statement of facts, the majority of which consisted of corrections of manifest clerical omissions.   One of them, however, purported to be a stipulation between counsel for the respective parties to the effect that the court might charge the jury orally, and that the stenographer might take it down in shorthand.   This, by the way, is contrary to the record, as originally made and certified, for it therein appears that the court was requested to instruct the jury in writing only in this case.

Although the court refused to set aside its certificate to the statement of facts, upon the application of the defendants, or to incorporate therein the proposed amendments, it, nevertheless, on March 27, 1894, amended its original certificate by certifying that the statement in said certificate above quoted is not true and will not be true until said statement of facts shall contain the amendments proposed by the defendants, together with rule 12 of the rules of the superior courts of the State of Washington, and the

rules of the superior court of Pierce county. This rule of
court provides that where a request for a charge in writing
is made, notice of the intention so to request shall be given
to the judge at or before the commencement of the trial.
The statute, however (Code Proc., § 354), provides that
such a request may be made when the evidence is concluded,
and, where the law and a mere rule of court conflict with
each other, the former must, of course, prevail. If, there-
fore, the request to charge in writing was made after the
evidence was closed, instead of at the commencement of
the trial, it would seem that it could not be disregarded on
that account. But, however this may be, the record as
certified by the court contains no exception to the failure
of the court to charge the jury in writing, and, conse-
quently, that question is not now a material one in this
case.

It was entirely proper for the learned trial judge to
amend his certificate so as to make it conform to the facts,
but we see nothing in the statute authorizing the court to
alter or amend a statement of facts which has been prop-
erly settled and certified, and then amend the certificate so
as to make it conform to the statement as thus amended.
As was said by this court in *State, ex rel. Hersner, v. Arthur*,
*supra*, this would be virtually a new settlement of the state-
ment of facts, which would destroy the force of the law
prescribing time; and the questions which ought to have
been settled within ten days after the filing of the state-
ment would remain unsettled up to the time of the hearing
of the appeal, and no intelligent preparation for the hear-
ing of a case in this court could be made.

As the court, in effect, certified, in accordance with the
provisions of the statute, that the proposed statement had
been agreed to between the parties, its certificate was suf-
ficient without that portion which is referred to in the sup-
plementary or amended certificate, dated March 27, 1894.

The statement as settled and certified on March 1st, must, therefore, for the purposes of this appeal, be deemed to correctly set forth the facts, matters and proceedings occurring in the trial and not otherwise appearing of record.

The respondents also move to dismiss this appeal for the alleged reasons that the appellant has not appealed to this court, or filed a brief in the case tried in the court below; that he has failed to join in this alleged appeal certain necessary parties; that there has not been settled, served or filed in this cause any bill of exceptions or statement of facts as required by law, and that the appellant has not filed an appeal bond in form or substance, as required by law, or such a bond as renders his appeal effectual. What we have already said disposes of the objection to the statement of facts.

The objection that the appellant has not appealed the cause tried in the court below seems to be based on the fact that, in his brief, he has omitted the names of Ralph, Kelley, and Mills, who were defendants, and designated only Zinram, Bacon, Hannah and Nachtsheim (in whose favor the judgment appealed from was rendered), as respondents.

The notice of appeal seems to be properly entitled, and was served, as required by law, upon all parties who appeared in the action. The appeal was, therefore, properly taken, and if the brief of the appellant is defective in not designating all of the defendants below as respondents here, it is not such a defect as would warrant a dismissal of the appeal on the application of those who are properly before this court, and are really the only parties respondent in the case. We find no difficulty in determining what cause was appealed to this court, and we apprehend that the respondents have found none.

Moreover the record shows that the respondents, impliedly at least, heretofore recognized the sufficiency of the

brief they now criticise, for, after it was filed, they applied
for more time in which to file their answering brief, and
stipulated to file it on or before April 15, 1894. Even if
that was not a direct waiver of the objection here made,
they certainly ought not to urge it here and now for the
first time.

The objection to the appeal bond is indefinite in that it
does not point out wherein it is defective or insufficient.
The only defect we perceive in the bond that can be said
to be at all material is the failure of the surety therein to
state in his affidavit that he was worth the amount speci-
fied in the bond, in property within this state, though he
did state that he was a freeholder of the state. A com-
plete answer to this objection to the affidavit is found in
the opinion of this court in *McEachern v. Brackett*, 8
Wash. 652 (36 Pac. 690). It was there held that when
no exception is taken in the trial court to the affidavit of
sureties upon an appeal bond, the defect is waived and
cannot be urged in the supreme court. The motion to
dismiss is denied.

The respondents, in their answers, admitted the making
and delivery of the note set forth in the complaint, but
alleged that the entire consideration for the same was re-
ceived by the defendant Ralph, and that they executed the
note solely for the accommodation of defendants Ralph
and Kelley, and at their instance and request, and as sure-
ties only, which fact was well known to the plaintiff. And,
as affirmative defenses, they set up the facts: (1) That on
January 11, 1893, the plaintiff, for a valuable considera-
tion, and without their knowledge or consent, entered into
an agreement with Ralph, the principal maker of the note,
to extend the time of payment for the period of ninety
days from and after said date; and (2) that the plaintiff
received from the defendant, W. B. Kelley, a good and
sufficient deed of conveyance of and to certain described

real estate in the city of Tacoma, and that said convey-
ance was made and received upon and under a verbal
agreement between said Kelley and the plaintiff that the
same should be held by the plaintiff as security for the pay-
ment of said note and one other certain note for nineteen
hundred dollars; that said real estate was, at the time of
the making and delivery of said deed, and ever since said
time has been, of the actual value of at least eight thous-
and dollars, and that the plaintiff, after the making and
delivery of said note and of said deed, without the knowl-
edge or consent of the defendants, conveyed said real es-
tate to a certain banking corporation doing business at
Tacoma, and thereby voluntarily relinquished and gave up
all of said security.

The plaintiff, in his reply, admitted that all of the said
$5,100 was paid to defendant Ralph, but alleged that it
was so paid for the use and benefit of all of the defend-
ants, except Boggs, and that all of the defendants, save
Boggs, signed the note as principal makers thereof.

As to the second defense the plaintiff alleged, in sub-
stance, that prior to the 12th day of August, 1892, the
answering defendants, together with other defendants, had
made and executed a note for $7,000, with interest at two
per cent per month, for the purpose of having the same
discounted and the proceeds used in buying apparatus and
materials for, and to pay the running expenses of, a cor-
poration or firm engaged in, or about to engage in, the
business of raising sunken vessels, and that on said 12th
day of August, 1892, said defendants, through their agents,
solicited plaintiff to discount said note; that plaintiff agreed
to discount said note on the express condition that said note
would be divided into two notes, one in the sum of $5,100,
the other in the sum of $1,900, and all of said defendants
sign said notes on the face thereof as principal makers, and

further provided defendants would give plaintiff real estate
to secure said notes.   That on August 13, 1892, the defend-
ant, W. B. Kelley, agreed to make and execute a deed of
the lots described in defendants' answer on the express
condition that the same should· be held by plaintiff or his
assigns as additional security for said notes, and that in
case default should be made in payment of the notes, the
property of the signers of said notes should be first ex-
hausted in payment thereof, or execution issued against
them.   That plaintiff, at said time and place, agreed with
defendant Kelley to accept said proposition, and accepted
said real estate as security to said notes upon the further
condition that plaintiff might convey said property to the
Union Trust and Savings Bank of Tacoma, to secure the sum
of $4,500, which sum plaintiff was about to borrow from
said bank, and which sum was a part of the $7,000 that
plaintiff loaned the defendants.   That thereafter, on said
August 13, 1892, and prior to the signing of said note by
any of the defendants, the plaintiff, W. B. Kelley, and said
Bank and Trust Co., made and entered into an agreement
in writing, containing all the conditions upon which said
deed was given, taken and held, which writing was as
follows:

"TACOMA, WASH., Aug. 13, 1892.

"Received from Stanton Warburton warranty deed of
William B. Kelley to said Stanton Warburton, conveying
lots 10, 11, 12 and 13, in block 708, City of Tacoma, with
distinct understanding that said deed may be recorded at
any time this bank may consider it necessary to further
secure the payment of a certain note for $4,500, dated to-
day and payable in 90 days, and made by Stanton War-
burton aforesaid and wife to this bank, or any renewals
thereof, and also a deed for same property from said Stan-
ton Warburton and wife to this bank, which is subject to
aforesaid conditions.   And it is distinctly understood that
the property conveyed becomes the absolute property of
this bank in case default be made in payment of above re-

cited note, or any renewals thereof, on 30 day's notice by
this bank.                        A. R. NICOL, *Cashier*.

"I hereby consent to above.        S. WARBURTON.

"I consent to above, said bank agreeing to first give mé
30 days' notice before recording my deed.

"W. B. KELLEY."

At the trial, upon the issues thus raised by the pleadings,
the plaintiff objected to the introduction of any evidence
on behalf of the defendants, on the ground that neither of
the alleged affirmative defenses stated facts sufficient to
constitute a defense, which objection was overruled by the
court.    When the defendants rested, the plaintiff moved
the court to strike out all the evidence submitted by defend-
ants, on the ground above stated, and to direct the jury
to return a verdict for the plaintiff.    The above motions
were denied, and thereafter the plaintiff further moved the
court to instruct the jury to return a verdict for the plaint-
iff on the ground that it did not appear from the evidence
that there was any agreement between plaintiff and either
or any of the defendants to extend the time of the payment
of the note.    This motion was also denied.

The appellant insists that these rulings of the court were
erroneous and prejudicial to him.    As it has already been
shown, the objection to the introduction of evidence as to
the two affirmative defenses, the motion to strike out the
testimony, and the request to direct a verdict for the plaint-
iff were made on the ground that the facts stated were not
sufficient to constitute a defense.    The only reason assigned
by the learned counsel for the appellant for their conten-
tion is that the facts as to extension of time of payment
and the release of security are not positively stated.    The
allegation is that the defendant "on information and belief
alleges," etc., and it is insisted that such an allegation is
unwarranted either by the code or by any rule of common
law pleading and, in fact, amounts to no allegation at all.

Our code provides (Code Proc., § 188), that the com-

plaint, among other things, shall contain "a plain and concise statement of facts constituting the cause of action, without unnecessary repetition." And it is undoubtedly true that the facts should be stated positively, and in a traversable form, but this does not necessarily prohibit the statement of a fact on information and belief, for such an averment may, nevertheless, be direct and positive. To state that the plaintiff is informed or believes that a particular fact exists would be bad pleading, because it would simply be an allegation of information or belief, as to the fact, and not an averment of the existence of the fact itself. Here the facts are stated and the words "on information and belief" may be regarded as surplusage. The rule, as deduced from the authorities, is laid down by Abbott, in his Trial Brief on Pleadings, § 58, as follows:

"A direct allegation of a fact may be expressed to be made 'upon information and belief,' and is not on that account bad on demurrer even when the fact so stated may be presumed to be within the personal knowledge of the party pleading."

See, also, *Wells v. Bridgeport Hydraulic Co.*, 30 Conn. 316; *McKinney v. Roberts*, 68 Cal. 192 (8 Pac. 857); *Ward v. Clay*, 82 Cal. 502 (23 Pac. 50).

From the foregoing it follows that the objections under consideration are not well founded.

It is asserted by the appellant that it is admitted by the pleadings that both Ralph and Kelley were principal makers of the note. And from that proposition as a premise he draws the conclusion that the facts stated in the first affirmative defense are insufficient, for the reason that it is therein alleged that the contract for extension of the time of payment of the note was entered into between the appellant and Ralph alone, and was consequently invalid and inoperative. That the pleadings admit that Kelley was a joint principal with Ralph is denied by the

respondents, and they strenuously insist that, even if he was a joint maker, the contract between the appellant and Ralph was, nevertheless, sufficient to discharge the sureties.

No pertinent authority is cited in support of either one of these positions. We are not convinced that the admission claimed by appellant can be found in the pleadings, or legitimately deduced therefrom. But, supposing that the position in that regard assumed by appellant is correct, what would be the effect of the contract upon the sureties on the note? Such an arrangement could not change or affect in the least the status of Kelley, provided he was a joint principal, but would change that of Ralph. As to the latter the original contract would no longer exist, and, as against him, the rights of the sureties would be suspended during the stipulated period of delay. And such an agreement, if not assented to by them, would result in their discharge. Story, Prom. Notes (7th ed.), § 414; 2 Daniel, Neg. Inst., § 1312. We think the appellant's position is not well taken.

It appears that the note for $7,000, above mentioned, was left at the Union Savings Bank with the cashier, Nicol, who was authorized to cancel the same when the note for $5,100 and another for $1,900 should be signed by the same parties. These latter notes were executed in the bank and left there in charge of Nicol. They were signed by Ralph and Kelley on the day they bear date, and by the respondents a day or two subsequently.

Evidence was admitted, over the objection of the plaintiff, of certain conversations alleged to have occurred between Nicol and the defendants, in the absence of the plaintiff, on the ground that Nicol was the agent of the plaintiff. The testimony objected to tended to prove that several of the defendants told Nicol that they were signing the note in controversy as sureties, and that Nicol stated at the time they signed the note that the plaintiff, War-

burton, had "put up" certain real estate to secure the note, and that he, Nicol, held the deed. The point is made that the agency of Nicol was not established, and that his declarations were, therefore, not evidence against the plaintiff. It must be conceded that the evidence of agency was not very cogent, but, still, under the circumstances, we think there was enough of it to warrant its submission to the jury under proper instructions.

The declarations of Nicol concerning the deeds of which he was the custodian were, perhaps, admissible, irrespecttive of the question of agency, on the ground that they tended to show the character and nature of his possession. *McConnell v. Hannah*, 96 Ind. 102; 1 Greenl. Ev., § 109. But evidence of declarations and conversations, although admissible, under proper circumstances, ought to be received with caution, and carefully scrutinized, for the words spoken may be indistinctly heard or imperfectly remembered.

The appellant takes exception to certain portions of the instructions given by the court to the jury, and also to the refusal of the court to charge the jury as requested by him.

To properly instruct the jury upon all of the various and intricate questions of law involved in this case was a task of unusual difficulty. But the law of the case, in almost every particular, was very accurately and intelligibly stated in the charge given by the learned judge, and what was therein said affords but few grounds for criticism. We are constrained to say, however, that, in one respect, we think the charge was misleading and not quite accurate when applied to the facts and circumstances of the case. The portion of the charge alluded to is as follows:

"The first question that is raised in the pleadings, and submitted to you for your determination in reference to each one of these defendants is, Was he or was he not a surety in fact? This question you will consider and de-

termine from the evidence.   If you believe from the evi-
dence in the case that any one or all of these men, who
are defending here, signed this note in the manner he has
signed it, but that he received no consideration of any kind
for it.    If he received nothing of value for signing it, but
if he entered into the obligation solely for the purpose of
paying the debt of another than himself, if the debt that
this note was given to secure was not his debt in any sense,
and he signed the note for the purpose of obligating him-
self to pay the debt of another, then in that event you
should find that he is a surety; and it does not make any
difference, so far as the determination of this question is
concerned, whether the plaintiff demanded that he sign it
as a principal maker, or sign it on the face of the note or
not.''

There was testimony in the case to the effect that one of
the reasons for not accepting the single note for $7,000, as
originally drawn, was that the names of the respondents
were written upon the back of that note, whereby it ap-
peared that they were mere endorsers and not makers, and
that the appellant and the bank refused to receive any note
whatever executed in that manner, and that the respond-
ents were aware of that fact.    In fact, the plaintiff alleged
in his pleading, and claimed at the trial, that the defend-
ants executed the note as principal makers.    And if they
did so execute it, and agreed to assume the obligation of
principal makers, as indicated by the note itself, they were
bound by their agreement, even although they received no
part of the consideration for the note.    If one signs a note·
apparently as a joint maker and, when sued upon his under-
taking, defends on the ground that he is in fact a surety
merely, it is certainly competent for the plaintiff to show
that he dealt with the defendant as a principal, and not as
a surety.    *Branch Bank v. James*, 9 Ala. 949.    And, that
being so, it was hardly proper to tell the jury that it made
no difference whether the plaintiff demanded the defend-
ant to sign the note as principal maker or not.

On the other hand, we think the instruction requested by the plaintiff on this particular point stated the law substantially, and should not have been refused. It was as follows:

"You are instructed that if you find from the evidence that the plaintiff, at the time said note was made, executed and delivered, received and accepted the same on the condition and understanding that each of the said defendants signed the same as principal makers, then I instruct you that it makes no difference whether any of the defendants other than Ralph received any of the money paid on account of execution and delivery of said note."

Objection is also made to that portion of the charge relating to agency. It was a contested point at the trial whether or not Nicol was so far the agent of plaintiff that the latter was bound by his declarations. The particular grounds of complaint are— (1) That the instruction given is not full and complete in any particular; and (2) that the court refused to make it more full and specific at the request of the plaintiff.

The contention of appellant in this regard is not without merit. The jury were told that if they found and believed from all the evidence that Mr. Nicol was acting for and representing Mr. Warburton as his agent in the matter of procuring the signatures to the note, then any declaration or admission that Mr. Nicol made, if he made any, at the time this transaction occurred of obtaining the signatures to the notes, ought to be treated by them just the same as though they had been made by Mr. Warburton himself, and given the same weight, and no more. The instruction was obviously correct as far as it went, but it furnished the jury no criterion by which they could determine the fact of agency.

It was contended by the plaintiff, and there was considerable testimony favoring his contention, that the note was left with Nicol at the bank, to be there signed, simply for

the convenience of all parties concerned. And, in accordance with this theory of the plaintiff, the court was requested to charge the jury, among other things, that if they found from the evidence in this case that the witness Nicol was simply getting the signatures of the parties to the note in question, and that the note was simply left with him for the convenience of all the parties, then that fact alone in law would not constitute him the agent of the plaintiff so as to bind the plaintiff by the declarations of Mr. Nicol made to the defendants, if they should find that said Nicol made any declarations to any of the defendants. We perceive no valid objection to this request. It was certainly applicable to the evidence before the jury, and should, therefore, have been given.

During the course of the trial the plaintiff offered in evidence two writings, of similar tenure, except signatures, which were in the following words and figures:

"TACOMA, WASH., January 14, 1893.
"S. Warburton:
"DEAR SIR — Will you please delay pressing the collection of our notes dated about the 13th of Aug., 1892, one for the sum of $1,900, and the other for $5,100, for about ninety days from above date, as we hope to pay the amounts at that time."

One of them was signed by defendants, E. G. Bacon and D. B. Hannah, and the other by defendant Wm. Zinram. The plaintiff sought to prove by these writings that the defendants who executed and delivered them to him, consented to an extension of the time of payment of the note, and were, therefore, estopped from claiming any immunity upon the ground of suretyship. But the court held that the same were incompetent and immaterial, and rejected the offer; and we think no error was thereby committed. It will be seen that the defendants simply requested, on their own account, additional time within which to pay

their notes.    There is nothing in the writing that refers, in the slightest degree, to Ralph, or any other person than the signers.    Nor is there anything to indicate a readiness on the part of these defendants to waive any of their rights as sureties, resulting from a change of the original agreement by which they were bound.    Mere delay in enforcing payment of a note will not discharge the sureties, because the contract is still unchanged.

But, if a valid contract extending the time of payment is made by the payee with the principal maker of a note, then the surety is discharged, unless he consents to it, or, with the knowledge of the new contract, agrees to be bound by it.    The appellant cites numerous authorities to the effect that a surety of a note is not to be discharged because the creditor complied with his request.    And that is undoubtedly true.    But the request spoken of, in all of the cases, was a request to give time to the principal, not to the surety himself.    If the requests under consideration tend to prove anything favorable to the appellant it is that the parties making them deemed themselves principals, and, as such, asked for indulgence.    But we do not now decide that they were admissible on that ground.    In view of the fact that a new trial must be ordered for the errors already indicated, we do not deem it necessary to further extend this opinion by undertaking to determine whether or not the evidence is sufficient to sustain the verdict, or by discussing any of the remaining objections raised by the appellant.

The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., and SCOTT, J., concur.

STILES, J.—I concur in the reversal upon the grounds stated, but do not agree to the construction given to *State, ex rel. Hersner, v. Arthur.*

HOYT, J. (*dissenting*). — I cannot agree with what is said in the foregoing opinion upon the motions to strike and to dismiss the appeal. I do not think it could have been the intention of the legislature to compel a judge to certify to a statement, if it was not true. I agree with what was said upon that subject in the case of *State, ex rel. Hersner, v. Arthur*, 7 Wash. 358 (35 Pac. 120), but do not think that what was therein said justifies the conclusion deduced therefrom. It was only decided in that case that neither of the parties could object to a statement unless they did so as provided by statute, and that there was no duty on the part of the judge to enter into an examination thereof to see whether or not it conformed to the facts. And this does not warrant the holding that a judge must certify a statement even although he has personal knowledge that it is untrue.

What is said in reference to the bond on appeal is perhaps justified by the case of *McEachern v. Brackett*, 8 Wash. 652, cited to sustain it. I did not concur in what was said in that case, and do not in what is said upon the subject in this. ·

Upon the merits I fully agree with the result announced, and also with the reasoning, but wish it distinctly understood that so far as I am concerned I desire no inference to be drawn from the decision in this case that the answers would have been held good if they had been attacked in this court upon the ground that it was incompetent to show, by oral testimony, that one who appears upon a note as a joint and several maker was in fact only a surety, for the purpose of relieving him from liability in a suit by the payee upon the note.

I desire further to say that the instruction first set out was, in my opinion, more than misleading. I think it misstated the law of the case.