[No. 13484.  Department Two.  February 14, 1917.]

# S. G. LIPSETT, *Appellant*, v. WILLIAM DETTERING, *Respondent*, CHARLES STRANDBERG & COMPANY *et al.*, *Defendants*.[1]

BILLS AND NOTES—EXTENSION OF TIME—CONSIDERATION—EVIDENCE —SUFFICIENCY.  Where the plaintiff was the holder of notes given in payment of the purchase price of mining machinery, and was also the owner of a water right leased to the maker of the notes, who had paid $1,600 on the notes to plaintiff's agent and was unable to proceed in his operations without the water, the maker's consent to divert $600 of such payment and apply the same to payment of the lease of the water is sufficient consideration for plaintiff's extension of time for payment of the balance due on the notes for the period of one year.

PRINCIPAL AND SURETY—RELEASE—EXTENSION OF TIME.  An agreement between the payee and the principal maker of a note to extend the time of payment for one year, releases the surety on the note, if the agreement is made upon a valuable consideration and without the consent of the surety.

STATUTES—PLEADING—AMENDMENT—SUFFICIENCY.  The general allegation as to the laws of Alaska on a certain subject is sufficiently amended at the trial by an amended complaint setting forth the specific statutes relied upon and alleging that it was the only regulation on the question in the statutes of Alaska.

SAME—EVIDENCE—FOREIGN LAWS.  A printed copy of the statutes of Alaska and the evidence of an attorney that the volume contained all the statutes in that territory on the subject in question, is sufficient *prima facie* proof of the laws of Alaska on the subject.

EVIDENCE—EXPERTS—ATTORNEYS—QUALIFICATION—DISCRETION.  An attorney testifying as to the laws of Alaska, as shown by a code, sufficiently qualifies as an expert where he testified that he had practiced law in that territory for three years and was so practicing when the code took effect; the qualification of an expert being largely within the discretion of the trial court.

PLEADING—TRIAL—AMENDMENT—DISCRETION.  Where a complaint alleges generally the effect of the laws of a foreign state, it is discretionary to allow a trial amendment setting forth the specific law relied upon.

APPEAL — PRESERVATION OF GROUNDS—INSTRUCTIONS — REQUESTS. Error cannot be assigned upon the failure of an instruction to define

[1]Reported in 162 Pac. 1007.

the phrase "valuable consideration," in the absence of any request therefor, an exception alone not being sufficient to take advantage of an omission.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 29, 1916, upon the verdict of a jury rendered in favor of the defendant, in an action on promissory notes. Affirmed.

*S. D. Wingate* and *J. F. Knight*, for appellant.

*Griffin & Griffin*, for respondent.

FULLERTON, J.—This is an action, brought in the superior court of King county, to recover upon three promissory notes, made and delivered to the plaintiff at Iditarod, Alaska, on October 2, 1912, by Charles Strandberg & Company, Emma C. Strandberg and William Dettering. While all of the makers were named as defendants in the action, service was had on the defendant Dettering only, the other defendants being without the territorial jurisdiction of the court.

The complaint was in the usual form. In it the notes were set forth by copy, and it was alleged that nothing had been paid thereon and that the same were due and owing. Judgment was demanded for the amount claimed to be due. Dettering, in his answer to the complaint, made certain denials and set forth four affirmative defenses. In the first of the affirmative defenses he pleaded payment. In the second, he pleaded that the notes were made and delivered in the territory of Alaska; that he received no part of the consideration of the notes, and that while he signed the same as a maker, he was in fact only a surety thereon, which the plaintiff well knew; that, on the maturity of the notes, the appellant, without his knowledge or consent, extended the time of the payment thereof for one year; that, under and by virtue of the laws of Alaska, such extension of time released him from liability on the notes. For a third defense, he pleaded want of notice of nonpayment at the time of the maturity of the

notes. For a fourth defense, he pleaded fraud and deceit on the part of the plaintiff in the procurement of the notes.

The allegations of the affirmative defenses were put in issue by a suitable reply. On the issues thus framed, the cause was tried to the court sitting with a jury. At the conclusion of the defendant's evidence, the plaintiff moved for a directed verdict in his favor, contending that the evidence submitted on the defendant's part did not constitute a defense. The court overruled the motion and, at the same time, allowed the defendant to amend so as to set forth more definitely the laws of Alaska relating to sureties on negotiable paper. The cause then proceeded to a close of the testimony, at which time the court withdrew all of the defenses save the second as amended at the time of the trial, submitting to the jury the questions whether the defendant was a surety upon the notes, whether there had been an extension of time for their payment, made upon a valuable consideration, and whether such extension, if made, was without the knowledge and consent of the defendant. The jury returned a verdict for the defendant, whereupon the plaintiff moved for judgment notwithstanding the verdict. This motion was denied, and judgment entered for the defendant upon the verdict of the jury. The plaintiff appeals.

Noticing the assignments of error in a somewhat different order from that in which the appellant presents them, the first to be considered is that the evidence is insufficient to support the verdict. The particular contention in this regard is that there was no evidence showing, or tending to show, a consideration for the extension of the time of payment of the notes. The notes were given as part of the purchase price of certain mining machinery and other personal property sold by the plaintiff to Charles Strandberg & Company. The appellant claimed to own a water right in a certain stream near the mining property, and this he leased to the purchaser at an annual rental of $1,200, payable in two installments of equal amounts. Concerning the trans-

action had at the time of the extension of the payment, Charles J. Strandberg, a member of the partnership of Charles Strandberg & Company, testified as follows:

"Mr. Lipsett came to Iditarod in the early part of September, 1913, and called on me for the money due on the notes and lease for water right, etc. I then explained to him that up to that time we had not been able to do any successful mining, on account of lack of water; I also informed him of the trouble we had had and were having with Riley & Marston, and that they claimed the water of Slate creek adversely to us. He then and there represented to me, and reassured me that he was the sole and prior owner of that water right, and that we certainly had the right to use it. He then and there instructed me not to let Riley impose on me any further, and to protect that water right in the courts if necessary. I showed him where I had gone away behind in my affairs and in the affairs of Strandberg & Co. on account of this lack of water. Everything was in arrears including the men's wages and grocery bills, and that I was ready to quit. I had a short time previously paid Erickson [the plaintiff's agent] $1,600 on account of the notes, but Lipsett wanted part of the payment, viz: $600 thereof applied to the payment of the lease and the balance to the notes, which I agreed to. In consideration of all of the circumstances and the application of the payment to the lease, he then and there agreed to extend the time of payment for the balance due him on the notes and lease for another year, if I would continue; and again directed me to protect that water right at all hazards and not to let Riley & Marston bluff me out. He also promised to see them. After this Mr. Lipsett went away, evidently satisfied because I would continue, and I did continue working. This was in September, 1913. The opposition of Marston & Riley continued, but it was so close to the end of the mining season that I took no steps to effectually stop them at that time. The mining season closed in the early part of October that year."

While the appellant disputed in some particulars the statements of the witness, it was for the jury to determine wherein the truth lay, and we are concluded by their findings. The jury were warranted in finding from this, we think, that the

appellant, in consideration of the application of certain moneys paid on the obligations due him from the debtor, in a way different from that directed by the debtor—that is to say, in consideration of being permitted to divert $600 of the $1,600 paid to be credited on the notes on which the surety was liable to an obligation on which the surety was not liable—consented to extend the time of payment of the notes for a definite period. This clearly is a promise founded upon a sufficient consideration. After accepting the conditions on which the debtor consented to change the application of the money paid, the creditor could not have enforced collection of the notes before the period of extension expired.

The appellant makes the further contention that the surety consented to the extension. But on this question, also, as we view the record, the most that can be claimed is there was a dispute in the testimony. Doubtless the jury could well have found that consent to the extension was given by the surety, but since he denied the fact and offered testimony tending to substantiate his denial, the question became one of fact for the jury, not one of law for the court.

It is settled law in a jurisdiction where the common law obtains that an agreement made between the payee and the principal debtor to extend the time of payment of a note for a definite period releases a surety, if the agreement is made upon a valuable consideration and without the consent of the surety. *Warburton v. Ralph*, 9 Wash. 537, 38 Pac. 140; *Binnian v. Jennings*, 14 Wash. 677, 45 Pac. 302; *MacDougall v. Walling*, 15 Wash. 78, 45 Pac. 668, 55 Am. St. 871; *Merchants' Bank of Port Townsend v. Bussell*, 16 Wash. 546, 48 Pac. 242. The case of *Bradley Engineering & Mfg. Co. v. Heyburn*, 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127, cited by the appellant, is not contrary to this principle. That case was decided after the enactment of the negotiable instruments act, which, as pointed out in the opinion, changed the prevailing rule with respect to an accommodation maker.

The appellant further complains that there was no suffici-
ent plea or proof of the laws of Alaska relating to negotiable
instruments, and that the court erred in not withdrawing the
case from the jury for that reason. The defendant, in his
amended answer set forth this branch of his defense in the
following language:

"That in the district of Alaska, where said promissory
notes and each of them were made and where the plaintiff
extended the time of payment to the defendant Strandberg
for an additional year within which to pay said notes, by
the law of said District of Alaska this defendant as surety
only was released thereby from the payment of said notes or
any portion or part thereof, and that by the action of the
plaintiff in extending the time to the only defendants who
received any of the consideration of said promissory notes,
this defendant was released and relieved from all liabilities
upon said promissory notes and each of them."

When the allegation was questioned at the trial, the court
permitted the defendant to set forth the specific statute on
which he relied, and by alleging that it was the only statu-
tory regulation on the question in the statutes of Alaska.
The plea as amended was sufficient. It clearly informed the
other party of the fact on which the pleader relied, and this
is the sole purpose of a pleading.

The proofs offered to sustain the plea were a printed copy
of the statutes of Alaska, and the evidence of an attorney
to the effect that the volume contained all the statutes in
that territory relating to negotiable paper in force at the
time of the execution of the notes and the time the extension
was given. To this there was no controverting evidence, and
it is sufficient *prima facie* to sustain the issue.

In this connection it is further contended that the witness
giving the testimony did not properly qualify. But the wit-
ness testified that he had practiced law in that territory for
three years and was so practicing when the code went into
effect. The question of the qualification of an expert is
largely one of discretion with the trial court, and its ruling

on the question of such qualification will not ordinarily be disturbed by the appellate court. At least, there must appear a gross abuse before interference is justified, and we find no such abuse in this instance.

It is next objected that the court erred in allowing a trial amendment to the answer, but this, again, was within the discretion of the court. The appellant was in no manner misled by the amendment. It was not a question of introducing a new defense of which he had no notice, but one of the sufficiency of a defense attempted to be pleaded in an answer to which the plaintiff had made reply. No abuse of the discretion of the trial court is manifest.

In its instruction to the jury concerning the extension of the time of payment of the notes, the court charged them that, before they could find that there had been a valid extension of time, they must find that the extension had been made upon a valuable consideration, but did not instruct them as to the meaning of the phrase "valuable consideration." The failure to define this particular term is assigned as error. But, conceding that it would have been error to refuse to define the term under other circumstances, we do not think the question is open to appellant here. The record fails to show any request for a definition, or any request for a more specific instruction on the matter. The plaintiff confined himself to an exception merely. There is a distinction in this respect between misdirection of the jury and mere nondirection. The former may be taken advantage of by an exception to the instruction, but to take advantage of the latter, the trial judge's attention must be called to the specific omission and a request made for an instruction on the particular matter. *Cogswell v. West St. & N. E. Elec. R. Co.*, 5 Wash. 46, 31 Pac. 411; *Enoch v. Spokane Falls & N. R. Co.*, 6 Wash. 393, 33 Pac. 966; *Allend v. Spokane Falls & N. R. Co.*, 21 Wash. 324, 58 Pac. 244; *Howe v. West Seattle Land & Imp. Co.*, 21 Wash. 594, 59 Pac. 495; *Tacoma v. Wetherby*, 57 Wash. 295, 106 Pac. 903; *State v. Johnson*,

19 Wash. 410, 53 Pac. 667; *State v. Ross*, 85 Wash. 218, 147 Pac. 1149.

"It is, then, a general rule of procedure, subject, in this country, to a few statutory innovations, that, mere *non-direction*, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by hereby excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete. The rule rests upon the soundest foundation. The facts of the case come to the mind of the judge as matters of first impression, and it will often be extremely difficult for him, in the short time allowed for a trial before a jury, and in the midst of such a trial, to prepare a series of instructions applicable to all the hypotheses presented by the evidence. On the other hand, counsel are presumed to have studied their case beforehand; to come to the court with a fair understanding of the facts which will probably be proved, and with a full knowledge of the law applicable to those facts. It is, therefore, their duty to give attention to the charge of the judge, and if, in their opinion, it omits to give direction as to the law applicable to any essential feature of the evidence, to call his attention to the omission and to request appropriate supplementary instructions; and where they fail thus to call his attention to something which he may fairly be supposed to have omitted from inadvertence, they ought not to be allowed to complain of the omission in an appellate court. A rule which would allow them to do so would be extremely inconvenient. It would multiply new trials and reversals, and often on grounds which have no connection whatever with the merits." 2 Thompson, Trials (2d ed.), § 2341.

We find no error in the record, and the judgment will stand affirmed.

Morris, Parker, Mount, and Holcomb, JJ., concur.