[No. 1726–3. Division Three. July 29, 1977.]

WESLEY H. NORD, ET AL, *Respondents*, v. LYNN E. PHIPPS, ET AL, *Appellants*.

*George W. Young,* for appellants.

*Donald A. Anderson,* for respondents.

GREEN, J.—Mr. and Mrs. Lynn E. Phipps appeal a summary judgment construing a guaranty agreement.

The facts surrounding the relationship of the parties which precipitated this lawsuit may be summarized as follows:

Prior to April 5, 1966, the Nords were indebted to the Phippses in the approximate amount of $13,700. This debt was secured by a real property mortgage. The Nords were also owners of stock in Market Street Motors, Inc. In April of 1966, the Nords sold a majority of their Market Street Motors' stock to Donald Weber. In payment, Weber executed a promissory note to the Phippses in the sum of $16,700 payable in monthly installments of $165. This note among other things discharged the indebtedness of the Nords to the Phippses and extinguished the first mortgage.

To secure the Weber note, the Phippses obtained a guaranty agreement and a real property mortgage from the Nords.

Weber defaulted on the note and in July 1974 the Phippses sought to foreclose the Nord mortgage. That action was dismissed without prejudice at the close of the Nords' case because the Phippses had failed to give the Nords notice of Weber's default as provided for in the guaranty agreement. No appeal was taken.

In February 1975, the Phippses gave the Nords notice of Weber's default setting forth the amount of the default as $1,500 for the months of May 1974 through February 1975, *i.e.*, 10 months. In March, the Nords commenced this action for declaratory judgment and deposited $1,665 into the registry of the court. This represented the amount claimed due on the note, plus the payment for the month of March 1975. Thereafter, in each of the months of April, May, June and July the Nords deposited with the court $165. The Phippses counterclaimed for foreclosure of the mortgage alleging a total default on the note of $4,208.03. The Nords successfully moved for summary judgment against the Phippses' counterclaim.

The court further found[1] that 24 payments were missed on the Weber note, *i.e.*, 13 represented short payments, and 11 were made up later. There were also five payments of interest only; however, these interest payments were agreed to by Weber, the Phippses and the Nords. The trial court concluded that the Nords, as uncompensated sureties, were discharged as to all payments missed which were not consented to and which were not made up, but that they were not discharged from payments yet to be made. Additionally, the court concluded that the mortgage was not in default since the Nords had paid into the court an amount sufficient to cover the nondischarged default.

---

[1] With the exception of CR 56(d), findings of fact and conclusions of law are superfluous to summary judgment determinations. However, they may be consulted to determine if there existed questions of material fact and whether the moving party was entitled to summary judgment as a matter of law. 4 L. Orland, Wash. Prac., 263 (1968).

One issue controls our disposition of this case, *i.e.*, whether the court accurately construed the law applicable to the discharge of an uncompensated surety upon the granting of an extension of time to the principal of the creditor. We find that the trial court did not.

■ The Restatement of Security § 129, at 346 (1941) states:

(1) Subject to the rules stated in Subsection (2) and to the rules in respect of negotiable instruments, where the principal and creditor, without the surety's consent, make a *binding* agreement to extend the time of payment by the principal, the surety is discharged unless the creditor in the extension agreement reserves his rights against the surety.

(Italics ours.) A binding agreement is one supported by consideration or a substitute therefor, *e.g.*, 1 Restatement of Contracts § 90 (1932). If the agreement is without consideration, then the surety is not discharged. Restatement of Security § 129, Comment (*c*) (1941). The restatement rule was recognized in *Gillman v. Purdy,* 167 Wash. 659, 9 P.2d 1092 (1932), relying on *Lipsett v. Dettering,* 94 Wash. 629, 162 P. 1007 (1917). An examination of the affidavits and documents considered by the trial court does not disclose a binding agreement between the Phippses and Weber to extend payment on the "discharged" installments. To the contrary, it reveals at best a tacit tolerance by the Phippses of Weber's delinquency. As stated in Restatement of Security § 130, at 352 (1941):

(1) . . . [T]he surety is not discharged because the creditor takes no action to enforce his claim against the principal unless the creditor's failure to act is a violation of a judicial decree.

(2) The surety who has only guaranteed the collection of the principal's obligation is discharged to the extent that the failure by the creditor to take with reasonable promptness appropriate remedies against the principal is the cause of the creditor's inability to collect from the principal.

The affidavits and documents before the trial court do not

support a conclusion that the Nords were merely "guarantors of collectability."[2]

Consequently, the judgment is reversed and the case is remanded for consideration of the foreclosure counterclaim. Because of our remand, the Phippses' other contentions, as well as the Nords' abortive cross–appeal,[3] need not be considered.

MUNSON, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied August 25, 1977.

Review denied by Supreme Court February 3, 1978.

---

[2]"In event of default in any installment payment on said note by the said maker, written notice of default will be given to both the said maker and the undersigned guarantors, and in the event the delinquent installment or installments are not brought into current standing by the said maker within 30 days from the date of notice, the undersigned guarantors, will thereupon bring the payments on said note into good standing and will thereafter continue to make the installment payments in accordance with the provisions in said note."

[3]The Nords failed to file a cross–appeal. A notice of cross–appeal is essential if the respondent seeks, as the Nords do here, affirmative relief as distinguished from the urging of an additional ground for affirmance. *See Waagen v. Gerde,* 36 Wn.2d 563, 219 P.2d 595 (1950); *Fraser v. Monroe,* 1 Wn. App. 14, 459 P.2d 64 (1969); *cf. Leland v. Frogge,* 71 Wn.2d 197, 427 P.2d 724 (1967).