[No. 4227.   Decided October 9, 1902.]

MONA GERTRUDE LOUGH, *Appellant*, v. JOHN DAVIS & COMPANY, *Respondent*.

APPEAL — WHEN LIES — JUDGMENT AGAINST ONE OF SEVERAL DEFENDANTS.

An order sustaining a demurrer to a complaint interposed by one of several defendants is appealable, although there has been no disposition of the case so far as another defendant is concerned, when the latter had never been served nor appeared in the action *(Keef v. Tibbals*, 18 Wash. 656, followed).

AGENTS — NONFEASANCE — LIABILITY TO THIRD PERSON.

An agent who is put in charge of property by the owner, with sole and absolute control and management thereof, and full power

to rent, repair, and keep same in safe condition for tenants, is liable for injuries resulting because of a failure to keep such premises in repair; there being no distinction, as regards an agent's liability, whether the injuries flow from his nonfeasance or misfeasance.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Reversed.

*Frederick R. Burch* and *Robert H. Lindsay,* for appellant.

*Charles F. Munday,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action against an agent, who was authorized to rent and repair the tenement house described in the complaint, for permitting the house to become unsafe for want of repairs, from which cause the plaintiff was injured.    Paragraph 2 of the complaint is as follows:

"That at all said times and for a long time before, the above named defendant, Sheldon R. Webb, has been and still is the owner of that certain real property known as lots 8 and 9, in block 38, of A. A. Denny's Addition to the City of Seattle, and of the buildings thereon situated, and that the above named defendant, John Davis & Co., has had, and still has, sole and absolute control and management of said real property as the servant and agent of said Sheldon R. Webb, with full power, authority and direction from their said principal to rent and repair the same, and to keep the same in repair and safe condition for tenants."

The other pertinent allegations are to the effect that a wide veranda, extending along two sides of the building about fifteen feet from the ground, was used in common by all of the tenants, and was inclosed by a railing; that the railing was allowed to become old, rotten, and unsafe

through the negligence of the defendants, and that, while the plaintiff was playing on said veranda, by reason of the unsafe condition, the railing gave way, and she fell from said veranda from a height of fifteen feet and more from the ground, and was injured, etc. To this complaint the defendant John Davis & Co. interposed a demurrer on the ground that it did not state facts sufficient to constitute a cause of action against it, the demurring defendant. There was no appearance by Sheldon R. Webb. The demurrer was sustained, and the plaintiff electing to stand on her complaint, judgment was entered on the demurrer. From such judgment sustaining the demurrer this appeal was taken.

The respondent has interposed a motion to dismiss the appeal for the reasons: (1) That the judgment appealed from is not a final judgment; (2) because no final judgment has been entered in this action; (3) because this court has no jurisdiction to hear and determine this action upon the attempted appeal herein. The idea embraced in all these assignments is that the judgment is not final, because there has been no disposition of the case so far as one of the defendants, Sheldon R. Webb, is concerned. Many authorities are cited, but we will notice only those from this court. *Freeman v. Ambrose,* 12 Wash. 1 (40 Pac. 381), simply decided that an order setting aside a default and vacating judgment thereon was not appealable. *Nelson v. Denny,* 26 Wash. 327 (67 Pac. 78), is simply an affirmance of the doctrine announced in that case. In *Johnson v. Lighthouse,* 8 Wash. 32 (35 Pac. 403), the appeal was dismissed because the Pacific Loan & Trust Investment Company was not served with notice of appeal; but in that case the said company had appeared in the action and filed a demurrer to the complaint. *Fairfield v. Binnian,* 13 Wash. 1 (42 Pac. 632), was a case where

a notice of appeal had not been given to a party who had appeared in the court below by intervention, and it was held that he was as much a party in interest as the parties who originally appeared in the action, and was entitled to a notice of appeal from any judgment upon issues raised by the original parties. These cases hardly seem to us to be in point on the questions involved here. In this case Sheldon R. Webb never had become a party to the action, never had appeared in the action, nor been served with notice, and the case falls squarely within *Keef v. Tibbals,* 18 Wash. 656 (52 Pac. 227), where it was held that, where a complaint has been filed against several defendants, and before service has been obtained against all of them the complaint has been stricken on motion of those served, an appeal lies from such order striking the complaint, although there has been no dismissal or other action taken with reference to the defendants not served. The motion to dismiss will be denied.

It is the contention of the respondent that the law is well settled that for a misfeasance the agent is personally liable, but that he is never liable for a mere nonfeasance; and that, the respondent being charged only with a nonfeasance or neglect to do its duty, and not with any misfeasance or act which it ought not to do, the complaint on its face shows that it is not liable, and that the demurrer was therefore properly sustained. This rule is announced by some of the law writers and many of the courts. One of the leading cases sustaining this doctrine is *Delaney v. Rochereau,* 34 La. An. 1123 (44 Am. Rep. 456), where it was held that under the doctrine of both the common and civil law agents are not liable to third persons for nonfeasance or mere omissions of duty, being responsible to such parties only for the actual commission of those positive wrongs for which they would be otherwise accountable in

their individual capacity under obligations common to all men. In this case a balcony which needed repairs fell, fatally injuring the plaintiff; and, while the agent was not responsible for the injured party's being in the house at that particular time,—he having obtained entrance by means of a key obtained from some one else,—the case is discussed and the judgment based upon the doctrine above announced. This is also the established doctrine in New York. The case of *Carey v. Rochereau,* 16 Fed. 87, is a Louisiana case, and bases its decision on *Delaney v. Rochereau, supra,* without discussion. *Labadie v. Hawley,* 61 Tex. 177 (48 Am. Rep. 278), held, in accordance with the same rule, that an agent renting his principal's house with authority to construct a cooking range was not liable for injury to an adjoining proprietor, caused by the use of the range; citing Story on Agency, 309, and other authorities. In *Feltus v. Swan,* 62 Miss. 415, it was held that an agent in charge of a plantation was not liable to the owner of an adjoining plantation for damage resulting from the malicious neglect and refusal of the agent to keep open a drain which it was his duty as such agent to keep open. The announcement of this doctrine is accredited by many of the courts indorsing it to the opinion in *Lane v. Cotton,* 12 Mod. 472, but it was, as a matter of fact, announced only incidentally in that case in a dissenting opinion. The question of the responsibility of the agent could not have been before that court, for the action was against a postmaster for the loss of a letter which was taken from the mail by a clerk, and it was only the responsibility of the master, and not that of the servant or agent, which was under discussion.

The reason assigned to sustain this rule is that the responsibility must arise from some express or implied obligations between the particular parties standing in privity

of law or contract with each other.    If this be true, it is
difficult to see what difference there is in the obligation
to their principal between the commission of an act by the
agents which they are bound to their principal not to do
and the omission of an act which they have obligated
themselves to their principal to do.    They certainly stand
in privity of law or contract with their principal exactly
as much in the one instance as in the other, for the obliga-
tion to do what ought to be done is no more strongly im-
plied in the ordinary contract of agency than is the ob-
ligation not to do what ought not to be done.    This reason
for the rule not being tenable, and no other reason being
obvious, the rule itself ought not to obtain; for. juris-
prudence does not concern itself with such attenuated re-
finements.    It rests upon broad and comprehensive princi-
ples in its attempt to promote rights and redress wrongs.
If it takes note of a distinction, such distinction will be a
practical one, founded on a difference in principle, and
not a distinction without a difference; and there can be no
distinction in principle between the acts of a servant who
puts in motion an agency which, in its wrongful operation,
injures his neighbor, and the acts of a servant who, when
he sees such agency in motion, and when it is his duty to
control it, negligently refuses to do his duty, and suffers it
to operate to the damage of another.    There is certainly no
difference in moral responsibility; there should be none
in legal responsibility.    Of course, if the omission of the
act or the nonfeasance does not involve a non-performance
of duty, then the responsibility would not attach.    If it
does involve a non-performance of duty to such an extent
that the agent is liable to the principal for the damages
ensuing from his neglect, there is no hardship in compel-
ling him to respond directly to the injured party.    Such
practice is less circuitous than that which necessitates first

14-30 WASH.

the suing of the master by the party injured, and then a suit by the master against the servant to recoup the damages.

But the honorable judge who wrote the opinion in *Delaney v. Rochereau, supra,* was mistaken in his announcement that the civil law indorsed the distinction upon which his decision was based, for, while the doctrine is stated in the Justinian Code that no man could usually be made liable for a mere omission to act, it was otherwise when the omission to act involved a negligence of duty. Domat argues that, as an agent is at liberty not to accept the order and power which are given him, so he is bound, if he does accept the order, to execute it; and, if he fail to do so, he will be liable for the damages which he shall have occasioned by his not acting. Under the Aquilian law the distinction between omission and commission was not recognized under such circumstances. In the ninth digest of the Aquilian law the following instance is given: One servant lights a fire, and leaves it to another. The latter neglects to check the fire at the proper time and place, and a villa is burned. The first servant was charged with no negligence, because it was his duty to light the fire, and it is argued, very sensibly, that, if the second could not be charged because not putting out the fire was simply an omission of duty, there would be a miscarriage of justice. Is the keeper of a draw-bridge, whose duty it is to close the draw after a ship passes through, and who negligently fails to perform that duty, allowing a car loaded with passengers to be hurled into the river below, to escape responsibility to the injured, while the man who attempts to operate it, but, in so attempting, operates it negligently and unskillfully, is held responsible? Instances in the ordinary transactions of life might be multiplied almost without end,

the very statement of which shows conclusively the fallacy of the rule.

The attempt by the courts to maintain this indistinguishable distinction has led to many inconsistent decisions. Thus, in *Albro v. Jaquith,* 4 Gray, 99 (64 Am. Dec. 56), the plaintiff was not allowed to recover of the superintendent of a canal company for damages caused by negligence in the management of the apparatus used for the purpose of generating, containing and burning inflammable gas; the superintendent being the agent of the company, and being charged with carelessly, negligently, and unskillfully managing the business.    It was held that he was not charged with any direct act of misfeasance, but only with nonfeasance, and that there was no redress, because, as the court said, the obligation to be faithful and diligent was founded in an express contract with his principal.  As we have before indicated, this would be equally true of the acts of commission or misfeasance in his stewardship.  But in *Bell v. Josselyn,* 3 Gray, 309 (63 Am. Dec. 741), also a Massachusetts case, and decided the same year, it was held that an agent who negligently directed water to be admitted to a water pipe was liable to a third person, because such action was misfeasance.    In that case it was not claimed that the admission of water to the pipe was negligent or wrongful, but the negligent act or omission was in allowing the pipe to become obstructed,—certainly as pure an omission or nonfeasance as could be conceived of.    But the court, in order to maintain the distinction which it deemed itself bound by precedent to do, virtually obliterated the distinction by the following circuitous reasoning:

"The defendant's omission to examine the state of the pipes in the house, before causing the water to be let on, was a nonfeasance.    But if he had not caused the water to be

let on, that nonfeasance would not have injured the plaintiff. If he had examined the pipes and left them in a proper condition, and then caused the letting on of the water, there would have been neither nonfeasance nor misfeasance. As the facts are, the nonfeasance caused the act done to be a misfeasance. But from which did the plaintiff suffer? Clearly from the act done, which was no less a misfeasance by reason of it being preceded by a nonfeasance."

Much more cogent and judicial is the reasoning of the same court many years after in *Osborne v. Morgan*, 130 Mass. 102 (39 Am. Rep. 437), where an agent of premises was held responsible to a third person for suffering to remain suspended from a room a tackle block, which fell upon and injured the plaintiff. The court, speaking through Chief Justice GRAY, said:

"The principal reason assigned was that no misfeasance or positive act of wrong was charged, and that for nonfeasance, which was merely negligence in the performance of a duty arising from some express or implied contract with his principal or employer, an agent or servant was responsible to him only, and not to any third person. It is often said in the books, that an agent is responsible to third persons for misfeasance only, and not for nonfeasance And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is

not nonfeasance, or doing nothing; but it is misfeasance, doing improperly."

There is still another class of cases which hold what seems to us to be the correct doctrine, viz., that the obligation, whether for misfeasance or nonfeasance, does not rest in contract at all, but is a common-law obligation devolving upon every responsible person to so use that which he controls as not to injure another, whether he is in the operation of his own property as principal or in the operation of the property of another as agent.   One of the leading cases maintaining this view is *Baird v. Shipman,* a case decided in 1890, and reported in 132 Ill. 16 (23 N. E. 384, 7 L. R. A. 128, 22 Am. St. Rep. 504).   There it was held that an agent who has complete control of a house belonging to an absent principal, and who lets the house in a dangerous condition, promising to repair it, is responsible to the third person injured by an accident caused by want of such repair.   There is nothing to distinguish this case from the case at bar excepting the promise to repair, and that does not seem to have been deemed by the court an important feature; but the case was decided upon the broad principle above announced.   Said the court:

"It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls as not to injure another.   That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable.   .   .   .   If the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts," citing approvingly *Osborne v. Morgan, supra.*

To the same effect is *Mayer v. Thompson-Hutchison*

*Bldg. Co.,* 104 Ala. 611 (28 L. R. A. 433, 53 Am. St. Rep. 88, 16 South. 620). The court there, after noticing the doctrine that the agent can be held liable to third persons for misfeasance only, says:

"It is difficult to apply the same principles which govern in matters of contract between an agent and third persons to the torts of an agent which inflict injury on third persons, whether they be of misfeasance or nonfeasance, or to give a sound reason why a person who, while acting as principal, would be individually liable to third persons for an omission of duty, becomes exempt from liability for the same omission of duty, because he was acting as servant or agent. The tort is none the less a tort to the third person, whether suffered from one acting as principal or agent, and his rights ought to be the same against the one whose neglect of duty has caused the injury."

In that case *Baird v. Shipman, supra,* is cited approvingly, with the remark that the rule laid down in that case is the better rule. So, in *Ellis v. McNaughton,* 76 Mich. 237 (42 N. W. 1113, 15 Am. St. Rep. 308), it was held that an agent who had entire control of premises was liable for injuries resulting from the removal of a walk on the premises by one of his employees, contrary to his orders, if, after such removal, he knew of the dangerous condition of the premises, and allowed them to remain in that condition. It would seem that, if there is anything in definitions, this was a pure nonfeasance, and yet the court, in trying to harmonize the distinction with the general rule announced and above discussed, said, speaking of the agent's duty in relation to the work:

"Every day it was so permitted to remain, when the defendant had the entire control of it, and the authority without question to replace it, was a wrong and a misfeasance."

It is also said that, irrespective of his principal, the agent was bound while doing the work to so use the

premises, including the sidewalk, as not to injure others. Misfeasance, said the court, may involve the omission to do something which ought to be done,—as when an agent engaged in the performance of his undertaking omits to do something which it is his duty to do under the circumstances, as when he does not exercise that degree of care which due regard for the rights of others required.    To the same effect, *Campbell v. Portland Sugar Co.*, 62 Me. 552 (16 Am. Rep. 503).  In *Lottman v. Barnett*, 62 Mo. 159, it was held that one having the general charge and superintendence of the construction of a building was responsible for the killing of a workman caused by the falling of a wall, which resulted from the giving way of supports on which the wall rested under the working of a jackscrew, although the appliance was put to work under the immediate direction of another person, employed by the owner of the building, and while the architect was absent, where it appeared that the manager of the jackscrew was employed under the advice of the architect, and subject to his discretion, and that he knew and approved of the method adopted for effecting the raising.    Whether the wall fell because the plan for raising it was a bad one, or because the supports were inadequate, it was held that in either case the disaster was attributable to positive misfeasance for negligence in a work which the architect had undertaken, but in which he failed to exhibit the care and skill which the law imposed upon him.    To make this distinction more shadowy, if possible, Mr. Mechem, in his work on Agency, § 572, after announcing the general rule, says:

"Some confusion has crept into certain cases from a failure to observe clearly the distinction between nonfeasance and misfeasance.    As has been seen, the agent is not liable to strangers for injuries sustained by them because he did not undertake the performance of some duty, which he

owed to his principal and imposed upon him by his rela-
tion, which is nonfeasance. Misfeasance may involve, also,
to some extent, the idea of not doing, as where the agent
while engaged in the performance of his undertaking does
not do something which it was his duty to do under the
circumstances,—does not take the precaution, does not ex-
ercise that care,—which a due regard for the rights of
others requires. All this is not doing, but it is not the not
doing of that which is imposed upon the agent merely by
virtue of his relation, but of that which is imposed upon
him by law as a responsible individual in common with
all other members of society. It is the same not-doing
which constitutes actionable negligence in any relation."

The author then quotes approvingly the language of
Chief Justice GRAY, in *Osborne v. Morgan, supra,* and of
Judge METCALF in *Bell v. Josselyn, supra,* so that it will
be seen that, even according to Mr. Mechem, a lack of care
and a lack of precaution, when once the duty is assumed,
are as much misfeasance as an active misdoing. The ir-
resistible logic of his statement is that the agent is respon-
sible to third persons when he is negligent in the perform-
ance of the duties which he undertakes, whether such act
be termed misfeasance or nonfeasance. The rule is thus
announced in 1 Am. & Eng. Enc. Law, p. 407:

"Where a principal engages an agent to do a certain work
and to take entire control over it, while the principal does
not interfere, but leaves it entirely with the agent, the
agent and not the principal will be liable to third parties
for injuries or damages sustained by the negligence or un-
skillful manner in which the work is done."

The question of whether or not the principal is liable is
not under discussion here. In the same section, and in
another paragraph, that author announces that an agent
is, in general, not liable to third parties for acts of negli-
gence for non-performance of duty; that as such he is only
responsible to the principal, and the principal to the third

party.   So that in the mind of the author the distinction must have been established between an agent that did not have complete or entire control and one who did.   There is no other way of harmonizing the two statements.   This is, in effect, the same rule enunciated by Mr. Wharton in his work on Agency, § 538.   Under the announcement that "wherever there is liberty there is liability," it is said:

"Hence, to strike at the general principle that lies at the basis of the adjudications we have just noticed, wherever the agent is at liberty to choose his own mode of action, then he is distinctively liable in damages, if by such mode of action he invades another's rights."

The same doctrine is announced in § 537, where it is said:

"Where an agent, who has general liberty of action, injures a third person, there the agent is personally liable for negligent as well as for malicious acts."

The author here discriminates between an agent and a servant, holding that a servant is a part of the machinery by which the master works, and there is no emancipation or liberty of action; but that this reasoning does not apply to agents who have complete control, and therefore perfect liberty of action.   Doubtless much of the mist and fog which have enveloped the decisions on this subject are due to confusing the omission of an act which one is not bound to perform with the imperfect performance of an act to which he is bound.   In other words, whoever undertakes a duty, and is clothed with authority to perform that duty, is responsible to the party injured for negligent imperfection in the discharge of such duty, on the broad doctrine announced above that he is obligated in transacting business to so transact it that his neighbor shall not thereby be injured; but there is no liability for the non-performance of a duty not assumed, or not independently controlled.   But

for neither the non-performance nor the malperformance of a positive duty can one escape responsibility, whether that duty is imposed by contract or by general obligation, for under any and all circumstances it is the essence of negligence to omit to do something which ought to be done. While some detached expressions of Mr. Wharton have been quoted in support of the distinction contended for by the respondent, that author puts the question at rest in his work on the Law of Negligence (2d ed.), § 535, where he says:

"The mere fact that I am the agent, in doing the injurious act, of another, does not relieve me from liability to third persons for hurt this act inflicts on them.    Judge Story, indeed, tells us that for *omissions* of the agent the principal alone is liable, while for misfeasances the agent is also liable; but this distinction, as has been already shown, can no longer be sustained.    The true doctrine is, that when an agent is employed to work on a particular thing, and has surrendered the thing in question into the principal's hands, then the agent ceases to be liable to third persons for hurt received by them from such thing, though the hurt is remotely due to the agent's negligence; the reason being that the causal relation between the agent and the person hurt is broken by the interposition of the principal as a distinct center of legal responsibilities and duties. But wherever there is no such interruption of causal connection; in other words, wherever the agent's negligence directly injures a stranger, the agent having liberty of action in respect to the injury, then such stranger can recover from the agent damages for the injury."

There is some contention in respondent's brief on the alleged barrenness of the allegations of the complaint, but we think the allegations were ample to show that the respondent was authorized to keep the building in repair; that it undertook that office or duty, and was in complete control of the work.    It is alleged that it was in absolute control and management, with full power, authority, and

direction to repair, and to allege that it agreed to do so
would only be to allege the agreement to do the duty which
the law imposed upon it after it had assumed the control
and management which is alleged.

Our conclusion is that the complaint states a cause of
action against the respondent.   The judgment is therefore
reversed, with instructions to the lower court to overrule
the demurrer to the complaint.

REAVIS, C. J., and ANDERS, MOUNT and FULLERTON,
JJ., concur.