## WRIGHTSMAN PETROLEUM CO. v. NESBITT.

No. 14843—Opinion Filed Dec. 31, 1923.

Rehearing Denied Jan. 29, 1924.

(Syllabus.)

1. **Highways — Township Bonds — County, State, and Federal Aid—Bids and Contract—Authority of State Commissioner of Highways.**

Where the voters of a township, in an election held by virtue of a resolution of the township board as provided for in section 10044, Comp. Okla. Stat. 1921, authorize the issuance of bonds, the proceeds of which are to be used only in conjunction with county, state, and federal aid when available in the construction of hard-surface roads in said township, and where the bond issue is approved by the Attorney General, after which said township board deposits the proceeds of said bonds with the State Commissioner of Highways, to be used by him in conjunction with an equal amount of federal aid as provided by the acts of Congress and laws of Oklahoma, held, the State Commissioner of Highways, and not the township board of said township, is the proper party to advertise for bids and execute the contract for the construction of said roads.

2. **Same—Injunction Against Commissioner —Insufficiency of Petition.**

In a suit to enjoin the State Commissioner of Highways from entering into a contract for the construction of hard-surface roads, where the plaintiff contends that said commissioner has not advertised for bids as provided by law, and the allegation of the petition is that to the best information and belief of the plaintiff said notice has never been published in any paper of general circulation in said county, held, defendant's demurrer thereto was properly sustained.

3. **Same — Specification of Road Material.**

Where the issuance of bonds for the construction of hard-surface roads is authorized by the voters of a township, and the ballots specify that roads are to be of concrete, and where the Commissioner of Highways in advertising for bids calls for bids on three classes of hard-surface roads, including concrete, he may contract for such class of road, and an injunction will not lie to prevent him from so doing.

4. **Same—Demurrer to Injunction Petition.**

Petition examined, and held, the allegations are not sufficient to state a cause of action against the defendant, and that the trial court properly sustained the defendant's demurrer thereto.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by Wrightsman Petroleum Company, a corporation, against Paul Nesbitt, Commissioner of Highways of the state of Oklahoma. From the judgment of the trial court, sustaining the defendant's demurrer to the plaintiff's petition, the plaintiff appeals. Affirmed.

Hughes, Foster & Ellinghausen and Keaton, Wells & Johnston, for plaintiff in error.

George F. Short, Atty. Gen., and M. C. McKenzie, Asst. Atty. Gen., for defendant in error.

MASON, J. This cause was commenced in the district court of Oklahoma county, Okla., by the plaintiff in error, as a taxpayer of Tiger township, Creek county, Okla., against the defendant in error to enjoin him as Commissioner of Highways from entering into a contract for the construction of certain highways in said township, known as federal aid project No. 110. Hereafter, the parties will be referred to as they appeared in the trial court.

On February 3, 1923, a resolution, as authorized by section 10044, Comp. Stat. 1921, was passed by the township board of said township authorizing the calling of a special election for the purpose of voting bonds in the sum of $300,000 to improve said highways in said township in accordance with specifications of the State Highway Department. The resolution further provided "the expenditure of the proceeds of the sale of bonds to cover a two-year-road-building program to be used only in conjunction with county, state, and federal aid when available."

The issuing of said bonds was authorized by the votes at an election held March 8, 1923, and later the bond issue was submitted to the Attorney General and approved by him. Thereafter, the township board deposited with the defendant, Commissioner of Highways, the sum of $150,000 to be used by him in conjunction with an equal amount of federal aid as provided by the acts of Congress and laws of Oklahoma.

The defendant commissioner proceeded to publish notice for sealed bids for the construction of the highway above referred to, which notice provided that the bids were to be received on October 10, 1923, at the office of the State Engineer at the State Capitol.

This action was then commenced by the plaintiff and a temporary injunction was issued. Thereafter a supplemental petition was filed, alleging that the Commissioner of Highways was to receive bids on October 31, 1923, and seeking to enjoin him from entering into any contract for the building of said

road. The State Commissioner of Highways appeared by the Attorney General, and filed a motion to dismiss upon various grounds, which was sustained by the trial court, and the case has been regularly appealed to this court.

Both parties devote a large portion of their brief to the question of whether or not this is a suit against the state, and therefore present the question as to the jurisdiction of the court to enjoin the defendant, as State Commissioner of Highways herein, but as we view the case, it is not necessary to express an opinion upon this question.

It is next contended by the plaintiff in error that the Commissioner of Highways has no power or authority to let a contract as herein attempted, and that no such authority was ever conferred on him by legislative enactments. In considering this question, it must be remembered the bonds were voted for a definite and specific purpose, to-wit, to build state highways in Tiger township in conjunction with county, state, and federal aid when available.

The Department of Highways was created in 1915, and it may be conceded that the act had no reference whatever to the building of roads such as contemplated in the instant case. In 1917, the Legislature, by joint resolution, assented to the terms and conditions of the Federal Road Act; pledged the faith of the state to carry out its share of the program and to carry into effect all requirements of the Federal Road Act, and granted certain authority to the Department of Highways of the state of Oklahoma. Sess. Laws 1917, page 526.

Thereafter, in 1919, the Legislature passed Senate Joint Resolution No. 17, Sess. Laws 1919, page 463, which provides in part as follows:

"Whereas, the Federal Aid Road Law of 1916 provides that the Bureau of Public Roads of the United States Department of Agriculture shall deal direct with the Department of Highways of the state of Oklahoma on federal aid road projects, and cannot deal with any subdivision of the state of Oklahoma. * * *"

The resolution then authorized counties, townships, road districts, and others to contribute under the laws of Oklahoma toward building federal aid projects, and provided that, under the federal law, the amount could only be paid out on the order of the State Department of Highways, as approved by the Secretary of Agriculture of the United States. The law then provided that any subdivision of the state might contribute such money, and the Commissioner of High-

ways was authorized to make claim on behalf of the Department of Highways for federal aid, and provided the money should be deposited in the State Treasury to the credit of federal aid road projects. The act further provided said designated funds should be subject to the draft of the Commissioner of Highways in payment of properly verified claims, regularly approved, for work done or material furnished on the construction of said federal aid project when payments are due under the terms of the contract governing construction of said federal aid project.

Congress, by the act of July 11, 1916, relating to rural post roads, provided that no part of the money appropriated should be expended until the Legislature of the state expressly assented to the terms of said act. This act of Congress was amended by the act of November 6, 1921, 42 Stat. at Large, chapter 119, p. 212, which gave the Secretary of Agriculture the right to approve projects or require the modification or revision thereof and provided that the state should submit to the Secretary of Agriculture and approve any proposed revisions of the designated system of highways provided for. Said Secretary of Agriculture to approve the type or character of improvements.

The acts of Congress above referred to were in full force and effect when Tiger township voted the bonds herein, the proceeds of which were to be used in conjunction with county, state, and federal aid when available.

Thereafter, the Legislature of Oklahoma by chapter 112 of the Sess. Laws of 1923, changed the laws relating to the Department of Highways. Said chapter, among other things, provided as follows:

"Section 4. The Commissioner of Highways is hereby vested wiith the powers and duties necessary and proper to enable the commissioner to fully and faithfully and efficiently carry out all the duties and purposes of this act. In addition thereto he shall have the following specific powers and duties:

"Subsection 6. Let all contracts for the construction or improvement of state highways, where such highways are to be constructed out of the money appropriated by the State Highway Commissioner out of the State Highway Fund.

"Subsection 12. The Commissioner of Highways is empowered, on behalf of the state, to enter into any arrangement or contract required by the duly constituted federal authorities, in order to secure the full co-operation of the government of the United States, and the benefits of all present and future federal allotments in aid of highway

construction, reconstruction, improvement or maintenance."

In a case of this kind, where the money is voted by a township to build roads in conjunction with state and federal aid, and money is deposited in the State Treasury, and placed in the fund designated as federal aid project, with the distinct understanding that the state is to apply for federal funds to aid and assist in the building of said roads, and where the policy of the federal government, in aiding federal aid road projects, is to deal only with the State Highway Department, we must conclude that the acts above referred to justify and authorize the State Commissioner of Highways to enter into a contract for the construction of said roads. This certainly was the intention of the Legislature and of Congress in passing the acts above referred to. It seems futile to say that the township trustees, who had no supervision over the work, no supervision over paying for the work, no supervision over the plans and specifications, and no supervision over the funds, and who could not deal direct with the federal government in relation to the construction of said roads, should be empowered to enter into the contract for such work. To give the acts above referred to such a construction would defeat the purpose of said acts.

Plaintiff in error next contends that, if the Commissioner of Highways has power to let said contract, he must follow the state law. Under this proposition, it is contended that the Commissioner of Highways has not advertised for bids according to the state law. The allegations in the supplemental petition of the plaintiff in error, in support of this contention, are as follows:

"That the defendant, Paul Nesbitt, purported to publish a notice to contractors, as this plaintiff is informed and believes, but that said notice was never published in any paper in Creek county, to the knowledge and belief of this plaintiff. and that this plaintiff has made inquiry and has examined different papers in Creek county, and particularly the Oilton Gusher, in which the original notice referred to in the original petition herein was published, and that the same has not appeared, and to the best information and belief of this plaintiff, said notice has never been published in any paper published and of general circulation in Creek county."

To the petition is attached a notice to contractors that bids would be received on October 31, 1923, for the construction of 8 miles of hard-surface road in Creek county, located between Drumright and Oilton, the same being Oklahoma federal aid project No. 110. The notice then contained other information and was signed by the Commissioner of Highways and the State Engineer. We think the petition, upon this question, is too indefinite and uncertain. Admitting said allegations to be true, we are of the opinion that the same are not sufficient to state a cause of action in favor of the plaintiff and against the defendant.

It is next contended that the plans and specifications were illegal, for the reason that the publication called for bids on three classes of hard-surface roads, while the voters of said township voted for a concrete road only. But inasmuch as the voters voted to build a concrete road, and the publication called for bids upon this kind of road, the commissioner may contract for the same, and injunction will not lie to prevent him from so doing; however, said commissioner would be limited to the kind of road selected by the voters, provided the same was approved by the Secretary of Agriculture.

It is next contended that the Commissioner of Highways cannot materially change the route of the road. The petition, however, fails to allege or point out in what way the location of the road has been materially changed. There is a plat attached to the petition, but the same fails to disclose any material change proposed to be made in the location of said road. In the oral argument it was admitted that practically the only change to be made was at a place where it was necessary to avoid two railway crossings. It appears that the proposed road, which is otherwise on the east side of the railway, which runs in a general north and south direction, crosses the railway and extends to the west for approximately one-quarter of a mile, and then turns north for approximately three-fourths of a mile, where it recrosses the railway. Under the proposed change, called to our attention in the oral argument, the highway would run parallel to the railway and to the east thereof between these two points. It is admitted in the brief of plaintiff in error that, if the change is simply an immaterial change for the purpose of evading a railway crossing, the Highway Commissioner would have the power to make the change. We are of the opinion that, if this change were made, it could be no more than an immaterial change for such purpose.

It is next contended that one M. L. Harris has sold material for the construction of said road, although the contract for the building of said road has not been entered into, and that this in itself shows such fraud and collusion as to warrant the injunction prayed for by the plaintiff herein. We can see no merit whatever in this contention, as the alleged contract of Harris could be of no

force unless the parties with whom it was made were successful in obtaining the contract for the construction of said highway.

From the foregoing, we must conclude that the allegations of the petition and the supplemental petition are not sufficient to state a cause of action against the defendant, and are not sufficient to entitle the plaintiff to the relief prayed for, and that the trial court properly sustained the defendant's demurrer thereto.

The judgment of the trial court is therefore affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, and HARRISON, JJ., concur.