[No. 28493. Department Two. November 1, 1941.]

F. C. BARBER *et al., Appellants,* v. GRAND SUMMITT
MINING COMPANY, INC., *et al., Respondents.*[1]

[1] Reported in 118 P. (2d) 773.

*Clinton & Southard,* for appellants.

*H. A. Davis,* for respondents.

BEALS, J.—F. C. Barber and L. S. Eastman, as joint plaintiffs, instituted this action against Grand Summitt Mining Company, Inc., and Winefred McMillan, Walter P. Tracey, and others, as defendants, setting forth in their amended complaint two causes of action, demanding upon the first cause of action thirty-five thousand dollars, and upon the second, one thousand dollars, each by way of damages for breach of contract.

In the first cause of action, plaintiffs alleged that September 30, 1938, they entered into an agreement with Grand Summitt Mining Company, Inc., hereinafter referred to as the company, whereby the company leased to them, for a period of five years, a group of mining claims in Okanogan county, Washington, one or more of which were held under patent from the United States, and others under location notices. Plaintiffs, as lessees, were to pay to the company as royalty ten per cent of the value of all ore removed from the claims, the sum of seven hundred fifty dollars to be paid forthwith as advance royalties.

Thereafter, by written contract dated October 31, 1938, plaintiffs and the company, as parties of the second and first part, respectively, together with certain other persons as parties of the third part, entered into a written contract which may be referred to as the supplemental agreement. The third parties to this agreement were lien claimants who had filed liens against the mining claims for labor performed or materials furnished to the company. Both the lease and the supplemental agreement were attached to plaintiffs' complaint as exhibits A and B, respectively. These contracts will be hereinafter referred to by their

designation as exhibits. Exhibit B contained the following provisions:

"And Whereas, it is understood and agreed that the said second parties will deposit in the First National Bank of Okanogan, Washington, the sum of $750.00 on or before November 1, 1938, according to the escrow agreement placed in said bank by said party of the first part and said parties of the second part, which sum of $750.00 shall be retained by said bank until a decree quieting the title in said first party to all of the above described premises, subject only to the liens of the third parties, Federal and general taxes.

"Now, therefore, in consideration of the sum of One Dollar and other valuable considerations, it is hereby agreed by all the parties hereto that on the deposit of said decree quieting the title in said first party, that out of said $750.00 so deposited, the Federal and general taxes against said premises shall first be paid and the remainder shall be distributed pro rata among said lien holders in proportion to the amounts of their respective claims.

"It is further stipulated and agreed that whatever payments of royalty or monthly rental payments are made by said second parties on this said lease from said first party dated the 30th day of September, 1938, for the above described premises, that said payments and rentals shall also be distributed to said lien holders after the payment of all said taxes, pro rata according to the amounts of their respective claims. That in consideration of such payment or payments, the said liens shall be subrogated to and made inferior and second to said lease from said first party to said second parties now in escrow in said First National Bank of Okanogan, Washington, and said third parties hereby agree not to issue execution or order of sale to sell the peaceful and quiet possession of said parties of the second part under said lease."

The escrow agreement referred to in the foregoing quotation from exhibit B was not made a part of the complaint, and does not appear in the record.

Plaintiffs alleged that November 30, 1938, they de-

posited the sum of seven hundred fifty dollars in the designated bank, and that they performed all the conditions which by exhibit B they had agreed to perform. They then alleged that it was

" . . . specifically understood and agreed by and between the plaintiffs and defendants that the *defendants* would promptly proceed to bring a suit to quiet title to the patented summitt lode mining claim set forth and described in said mining lease, and the only reason or object in entering into said supplemental agreement marked exhibit 'B' was that the plaintiffs would deposit the $750 in the First National Bank of Okanogan, Washington, upon condition and for the purpose of having the *said Grand Summitt Valley Mining Company, Inc., quiet title to said summitt lode mining claim,* patented, as set forth in the lease, and as set forth in said exhibit B." (Italics ours.)

It should be noted that, while plaintiffs first alleged that the *defendants* would promptly proceed to quiet title to the designated mining claim, in the latter portion of the quotation it is alleged that the *company,* which, of course, was the owner of the claim, should quiet its title thereto.

Plaintiffs then alleged that, pursuant to exhibits A and B, they entered into possession of the mining claims, undertook to develop the same, and expended thirty-five hundred dollars in connection with their mining operations; that, during the development of the mining claims, they discovered valuable ores which would produce a net return of ten thousand dollars over and above the expenses of mining, smelting, etc.; and that they secured certain persons to consider entering into an agreement to operate the mining claims, which would have produced, for plaintiffs' benefit, twenty thousand dollars by way of profits. Plaintiffs then alleged that, because no suit to quiet title to the mining claim was instituted by defendants, or either of them, the persons whom plaintiffs had interested in

the property refused to invest therein, to plaintiffs' damage in the sum of twenty thousand dollars.

Plaintiffs then alleged that the defendant lien claimants, by exhibit B, agreed not to issue execution against the mining claims, or ask for any order of sale thereof, and

". . . that plaintiffs are informed and believe that on February 24, 1940, in further violation of the said agreement by said defendants, the said lienholders caused an execution to issue and an execution sale to be made of said premises, and which said premises were sold by said lienholders, defendants on said date to W. H. Patterson, attorney for said lienholder-creditors for the sum of $4103.35."

Plaintiffs then alleged:

"That the plaintiffs are informed and believe that in view of the said violations of their agreements by defendants as hereinbefore set forth that the defendants have failed and refused to prosecute any suit to quiet title, and have attempted to take possession of said mining premises wrongfully and unlawfully and oust the plaintiffs therefrom to plaintiffs further damage in the sum of $5,000."

Finally, in their first cause of action, plaintiffs alleged that October 18, 1939, they served upon defendant company a written demand that it proceed with the suit to quiet title to the patented mining claim; that defendant company refused to bring any such suit; and that February 3, 1940, the company served upon plaintiffs a written notice of cancellation of the mining lease.

By way of a second cause of action, plaintiffs alleged that, at the time exhibits A and B were entered into, defendants had no merchantable title to the patented "Summitt Lode Mining Claim," being one of the group of claims referred to in exhibit A; that for this reason exhibit A did not vest plaintiffs with sufficient title under exhibit A; and that defendants

failed to bring any suit to quiet title to the patented claim referred to. Plaintiffs then alleged, on information and belief, that defendants never intended to prosecute any action to quiet title, as provided in exhibit B; that, for the reasons alleged, the payment of seven hundred fifty dollars which plaintiffs made, and the further payment of two hundred fifty dollars which they made on account of royalties, were without consideration, to plaintiffs' damage in the sum of one thousand dollars; wherefore plaintiffs demanded judgment as above stated.

Defendant J. C. McMillan and four other of the defendants, all of whom were members of the group of lien claimants, appeared in the action and demurred to plaintiffs' second amended complaint, upon the ground that neither of the two causes of action there impleaded alleged sufficient facts to constitute a cause of action against the demurring defendants, and upon the further ground that several causes of action were improperly joined. After argument, the court sustained this demurrer, allowing plaintiffs ten days within which to further plead. Plaintiffs having elected to stand upon their second amended complaint, the trial court, by order dated April 30, 1941, dismissed the action, with prejudice, as to the five demurring defendants. From this order of dismissal, plaintiffs have appealed.

Error is assigned upon the ruling of the trial court sustaining respondents' general demurrer to appellants' first cause of action; upon the sustaining of respondents' general demurrer to the second cause of action; and upon the dismissal of the action as to the five respondents named.

From appellants' assignments of error, it may be assumed that the trial court sustained respondents' demurrers upon the ground that neither of appellants'

causes of action stated sufficient facts to constitute a cause of action. As we are of the view that the trial court was correct in sustaining the general demurrer, the second ground of demurrer assigned by respondents may be ignored.

The order appealed from, after reciting that the trial court had sustained the demurrers, and that appellants had elected to stand upon their second amended complaint, continues:

"And whereas the plaintiffs announced further that they would expect the court to dismiss with prejudice the said two causes of action for the reason that they desired to appeal from the ruling of the court upon said demurrer."

The order appealed from dismissed the action as to the five respondents, with prejudice. It would seem that under our decisions the order is appealable (*Pelly v. Behneman*, 168 Wash. 465, 12 P. (2d) 422; *Patterson v. Zuger*, 187 Wash. 285, 60 P. (2d) 69), but the propriety of entering an order dismissing an action as to certain defendants, part of a group similarly affected by the action, would seem questionable. It might well be contended that nothing more than an order sustaining the demurrers should have been entered, followed by an order reciting that plaintiffs had elected to stand upon their second amended complaint, the final judgment of dismissal to be included in the judgment entered upon final disposition of the action.

In 80 A. L. R. 1186, and 114 A. L. R. 759, are found notes (citing many cases) to the effect that it is the general rule that an order or decree dismissing an action as to a portion of the defendants, all of whom are charged jointly, and whose interests are identical and not severable (the meaning of the word "severable" is discussed in several of the cases cited), is not a final judgment from which an appeal will lie while

the case remains before the trial court undisposed of as to the other defendants.

In the case at bar, however, the order appealed from dismisses the action with prejudice, and is therefore, under our practice at least, appealable.

The following decisions of this court, bearing upon the procedure to be followed in such a matter as was here presented to the trial court, are, to some extent, in conflict: *Dwyer v. Schlumpf,* 6 Wash. 25, 32 Pac. 1005; *Johnson v. Lighthouse,* 8 Wash. 32, 35 Pac. 403; *Fairfield v. Binnian,* 13 Wash. 1, 42 Pac. 632; *Pennsylvania Mortgage etc. Co. v. Gilbert,* 13 Wash. 684, 43 Pac. 941, 45 Pac. 43; *Keef v. Tibbals,* 18 Wash. 656, 52 Pac. 227; *Lough v. John Davis & Co.,* 30 Wash. 204, 70 Pac. 491, 59 L. R. A. 802; *Andrews v. Uncle Joe Diamond Broker,* 44 Wash. 668, 87 Pac. 947; *Whitehead v. Stringer,* 106 Wash. 501, 180 Pac. 486.

As, under the peculiar circumstances here presented, the appeal prosecuted by appellants should be entertained and determined upon the merits, we simply call attention to the fact that some question exists as to the proper procedure to be followed in such a situation as was presented to the trial court.

From the portion of the judgment last above quoted, it appears that appellants invited the entry of the order appealed from, desiring to obtain a ruling of this court reviewing the trial court's action in sustaining the demurrer to appellants' second amended complaint interposed by the five defendants now appearing before this court as respondents herein. Whether or not the order of dismissal now before us for review was prematurely entered, it is, under the decision of this court in *Pelly v. Behneman, supra,* subject to review on appeal, and, under the circumstances, appellants having, as they did, invited the entry of the order, we are content to review the order on the merits.

Respondents were not parties to the lease between the company and appellants, set forth in the complaint as exhibit A. Respondents were merely included in the group of lien claimants who joined in execution of the agreement referred to as exhibit B.

Appellants' complaint of the defendants in the action is apparently two-fold: First, that no suit to quiet the company's title to the mining claims was instituted and prosecuted to judgment; and second, that defendant lien claimants, in violation of their agreement as contained in exhibit B, caused an execution to issue and an execution sale of the mining claims to be made thereto. The record is silent as to any decree of foreclosure of respondents' liens or concerning any action based on such lien claims.

As to the first element of appellants' causes of action, the failure to institute any suit to quiet title, it does not appear that respondents ever contracted with appellants to institute or cause to be instituted any such proceeding. Exhibit B refers to "a decree quieting the title in said first party [the company] to all of the" mining claims, subject only to the liens of respondents and other lien claimants and Federal and general taxes. While the complaint alleges that it was agreed between appellants, as plaintiffs, and the defendants in the action, that the defendants would proceed to bring a suit to quiet title, in the same paragraph appellants alleged that a deposit of seven hundred fifty dollars, which they made, was

" . . . upon condition and for the purpose of having the said Grand Summitt Valley Mining Company, Inc., quiet title to said summitt lode mining claim, patented, as set forth in the lease, and as set forth in said exhibit B."

It clearly appears, then, that there is alleged no basis for the contention that respondents ever assumed any

contract obligation to appellants in connection with the contemplated action to quiet title.

If any ground for relief against respondents is stated in either plaintiffs' first or second cause of action, it must be based upon appellants' contention that respondents violated some agreement which they made, to the effect that they would not issue an execution against the mining claims. Concerning this phase of the complaint, appellants alleged:

"That plaintiffs are informed and believe that on February 24, 1940, in further violation of the said agreement by said defendants, the said lienholders caused an execution to issue and an execution sale to be made of said premises, and which said premises were sold by said lienholders, defendants on said date to W. H. Patterson, attorney for said lienholder-creditors for the sum of $4103.35."

This allegation is defective because such proceedings as the issuance of an execution and the holding of a sale pursuant thereto are matter of public record; and matter of public record, within the jurisdiction within which the action is brought, may not properly be pleaded as upon information and belief. In Bancroft's Code Pleading, vol. 1, § 415, the general rule as to traverses, denials, etc., is laid down as follows:

"It is a general rule that when the existence of an alleged fact may be ascertained from an inspection of a public record, its existence cannot be put in issue by a denial based solely upon information and belief, or upon a want of information or belief."

In volume 1 of the supplement to the text above cited, the rule is repeated, with the further statement that "a denial of such a matter in this form presents no issue, and will be disregarded."

The question has several times been presented to this court, and we have invariably held that an allegation concerning a matter of local public record cannot

be denied on information and belief, and that a denial in that form raises no issue. *Sumpter v. Burnham,* 51 Wash. 599, 99 Pac. 752; *Belknap Glass Co. v. Brown,* 69 Wash. 127, 124 Pac. 390; *White v. Jansen,* 81 Wash. 435, 142 Pac. 1140; *Title Guaranty & Surety Co. v. First Nat. Bank,* 94 Wash. 55, 162 Pac. 23; *Olsen v. Bremerton,* 110 Wash. 572, 188 Pac. 772.

It would seem that, if a denial of an allegation concerning a matter of local public record may not be based upon information and belief, neither can an affirmative allegation of the existence of facts which are necessarily matter of public record be so based.

In any event, the allegation is fatally defective, in that it contains no allegation that any such execution was ever issued or any sale had pursuant thereto. It merely alleges that appellants were informed that the lienholders, on a date named, had caused an execution to issue and a sale to be made pursuant thereto, and that appellants believed the information which they had received to be true. In Bancroft's Code Pleading, vol. 1, § 35, it is stated:

"And it has been held that an allegation that a party 'is informed and believes' that certain facts exist, without further alleging on such information and belief that those facts do exist, is not a sufficient allegation of any issuable fact, being merely an allegation as to the pleader's information and belief."

In volume 1 of the supplement to the above cited text, § 35, it is stated that, in addition to the averment as to information and belief, there must be a direct averment of the fact or facts.

In the case of *Warburton v. Ralph,* 9 Wash. 537, 38 Pac. 140, this court said:

"To state that the plaintiff is informed or believes that a particular fact exists would be bad pleading, because it would simply be an allegation of informa-

tion or belief, as to the fact, and not an averment of the existence of the fact itself."

In the recent case of *Large v. Martin*, 178 Wash. 619, 35 P. (2d) 68, this court affirmed a judgment of the superior court dismissing an action for equitable relief. It appeared that the defendants demurred to the amended complaint, and after the trial court had sustained these demurrers, the plaintiff elected to stand on his amended complaint, whereupon the judgment of dismissal was entered, from which the appeal was taken. After discussing several other questions, this court considered an allegation of the amended complaint to the effect that "the plaintiff believes that the lands sought to be sold . . . are not public lands." Concerning this allegation, we said:

"Still further, the allegation that the plaintiff, appellant, *believes* that the lands sought to be sold by the officers of the state are not public land must and will be treated as immaterial and insufficient as a matter of pleading. The statute, Rem. Rev. Stat., § 258, provides that the complaint, among other things, shall contain 'a plain and concise statement of facts, constituting the cause of action, without unnecessary repetition.' One may well plead a fact upon information and belief, because thus the fact would be pled upon which an issue might be made, but the belief of the pleader in the existence of a fact gives no cause of action, nor does the assertion of such a belief call for any answer or denial.

"In *Warburton v. Ralph*, 9 Wash. 537, 550, 38 Pac. 140, this statute was analyzed, and, while the pleading in that case was held to be good because it positively stated facts, though upon information and belief, it was very correctly said, although by way of argument:

" 'And it is undoubtedly true that the facts should be stated positively, and in a traversable form, but this does not necessarily prohibit the statement of a fact on information and belief, for such an averment may, nevertheless, be direct and positive. To state that the plaintiff is informed or believes that a particular fact

exists would be bad pleading, because it would simply be an allegation of information or belief, as to the fact, and not an averment of the existence of the fact itself.' "

In the case of *Moore v. Tumwater Paper Mills Co.,* 181 Wash. 45, 42 P. (2d) 29, this court referred to certain allegations in the complaint, which were under examination, saying that certain allegations were not made categorically or positively, but only upon information and belief, and were not alleged as traversable facts.

Manifestly, the only allegation in the quotation from appellants' complaint, above set forth, which respondents could deny, is that appellants "are informed and believe," etc., both the subject matter of information conveyed to appellants and their belief in connection therewith being entirely immaterial.

In the case of *Swank v. Sweetwater Irrigation & Power Co.,* 15 Ida. 353, 98 Pac. 297, the supreme court of Idaho said:

"The allegation that 'defendant is informed and believes' certain facts, without also alleging on information and belief that those facts do exist, is no allegation at all."

In the later case of *Peterson v. Hague,* 51 Idaho 175, 4 P. (2d) 350, the same court used the following language:

"The rule undoubtedly obtains that in addition to the averment as to information and belief there must be a direct averment of the fact or facts, otherwise no issue is raised."

The cases of *Weiss v. Schafer,* 26 Pa. Dist. 166; *Sebastian County Road etc. v. Hocott,* 141 Ark. 301, 217 S. W. 258; *Nichols & Shepard Co. v. Hubert,* 150 Mo. 620, 51 S. W. 1031; and *Bank of North America v. Rindge,* 57 Fed. 279, are to the same effect.

In the case of *Wrightsman Petroleum Co. v. Nesbitt,*

101 Okla. 48, 222 Pac. 957, the supreme court of Oklahoma considered the following allegation:

" 'That the defendant, Paul Nesbitt, purported to publish a notice to contractors, as this plaintiff is informed and believes, but that said notice was never published in any paper in Creek county, to the knowledge and belief of this plaintiff, and that this plaintiff has made inquiry and has examined different papers in Creek county, and particularly the Oilton Gusher, in which the original notice referred to in the original petition herein was published, and that the same has not appeared, and to the best information and belief of this plaintiff, said notice has never been published in any paper published and of general circulation in Creek county.' "

Concerning the allegation, the court said:

"We think the petition, upon this question, is too indefinite and uncertain. Admitting said allegations to be true, we are of the opinion that the same are not sufficient to state a cause of action in favor of the plaintiff and against the defendant."

Apparently the court considered the allegation that the notice referred to was not published to the "knowledge and belief of" the plaintiff as an insufficient allegation of fact, and that the allegation was obnoxious to a demurrer.

In the case of *Southern R. Co. v. Rollins,* 45 Ga. App. 270, 164 S. E. 216, the allegation that "petitioner is informed and believes that the deceased was first struck" by a certain train was held bad on special demurrer, the court being of the opinion that the language quoted "stated only the plaintiff's information and belief and did not allege an issuable fact."

In the case of *Murphy v. Murphy,* 189 Ill. 360, 59 N. E. 796, the supreme court of Illinois held that an allegation of plaintiff's information and belief as to a material fact was bad on general demurrer, quoting from 3 Ency. Pl. & Prac., p. 363:

" 'A mere statement that the plaintiff is informed, or is informed and believes, puts in issue only his information and belief, and not the truth or falsity of the facts thus referred to.' "

In the recent case of *Dealtry v. Selectmen of Watertown*, 279 Mass. 22, 180 N. E. 621, the supreme judicial court of Massachusetts said:

"An allegation that the plaintiff is informed and believes that a fact exists is not a sufficient allegation that it does exist."

This rule was followed in the later case of *Tolman v. Crowell*, 288 Mass. 397, 193 N. E. 60, in which the earlier case was cited.

In the case of *Patterson v. Caldwell*, 58 Ky. 489, the court, referring to an allegation in the complaint, that the plaintiff believed it to be true that William S. Patterson was in fact a principal debtor in the note, jointly with the defendant William F. Patterson, said:

"The only allegation he [the plaintiff] made on the subject was that he believed it to be true that William S. Patterson was in fact a principal debtor in said note jointly with the defendant, William F. Patterson. Now this allegation was wholly immaterial. The defendant was not bound to controvert it; for although he might have been able to deny that he was a principal in the note, yet he could not have denied, nor was he required to deny, that the plaintiff *believed* that such was the fact."

In the case of *Prescott & Bros. v. Annis*, 6 Ky. Opinions 289, in approving the dismissal of plaintiff's petition, which contained an allegation that plaintiffs "are informed and believe" a certain fact, the court of appeals said:

"Such indirect and equivocal pleading ought not to be tolerated. If their petition had been taken for confessed, it could not have been held that appellees admitted more than that Prescott Bros. had been informed, and therefore believed, that property belong-

ing to them had been sold under the attachments of appellees. Appellants failed to show either by their pleadings or by proof that they were entitled to any relief whatever."

In 49 C. J. 149, § 163, the rule is stated as follows:

"It is usually held that an allegation that the pleader is informed and believes that certain facts are true is insufficient, for the reason that a denial would put in issue, not the truth of the facts, but merely the information received and the belief entertained by plaintiff, and if the petition is taken as confessed it could not be held that defendant admitted more than that plaintiff had been informed of and believed the facts stated, without admitting their truth. . . . But, on the other hand, there are cases in which allegations that plaintiff is informed and believes that certain facts exist have been regarded as sufficient."

Examination of the authorities shows beyond question that the majority of courts have held that such an allegation as is contained in the complaint now before us presents no relevant issue of fact, but merely an allegation as to the pleader's belief, and is consequently bad. In other words, *an allegation of fact on* information and belief is ordinarily sufficient, while an allegation *of* information and belief is not sufficient.

In the recent case of *Large v. Martin, supra,* this court followed the majority rule, and in accordance with that decision, the order appealed from, dismissing the action as to respondents herein, is affirmed.

ROBINSON, C. J., SIMPSON, and JEFFERS, JJ., concur.

BLAKE, J. (dissenting)—I dissent. While defendants did not agree to bring a suit to quiet title, they did agree to hold their lien claims in abeyance pending suit to quiet title and to subordinate their claims to plaintiffs' lease. I think it is sufficiently alleged that defendants breached their contract to the damage of

plaintiffs notwithstanding the pleader's use of the phrase that "they are informed and believe," etc. Under a liberal construction of the pleading, an issue is presented which may be traversed.

"A direct allegation of a fact may be expressed to be made 'upon information and belief'; and is not on that account bad on demurrer, even when the fact so stated may be presumed to be within the personal knowledge of the party pleading." 1 Abbott's Trial Brief on Pleadings (2d ed.), p. 113, 3.

Pomeroy, in his work on Code Remedies (5th ed.), p. 684, § 443, says:

"The true doctrine to be gathered from all the cases is, that if the substantial facts which constitute a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are imperfect, incomplete, and defective, such insufficiency pertaining, however, to the form rather than to the substance, the proper mode of correction is not by demurrer, nor by excluding evidence at the trial, but by a motion before the trial to make the averments more definite and certain by amendment."

In the note to that section, p. 691, the author adds:

"The objection that the averments in a complaint are made on information and belief is not a ground for demurrer."